FILED

2025 AUG 22 PM 1:47

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

Natalie Bible
1027 Wilshire Blvd.
Los Angeles, CA 90017
(310) 927-0708
nmbible119@gmail.com
Plaintiff, In Pro Per

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

NATALIE BIBLE,

      Plaintiff,

  vs.

SERENE ZLOOF, an individual;
ROSY ZLOOF, an individual;
ZACHARY JONES, an individual;

      Defendant(s)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:25 CV 07918-DMG-(BFM)

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (12 COUNTS:
RICO, FEDERAL STATUTORY
VIOLATIONS AND SUPPLEMENTAL
STATE LAW CLAIMS - SEE
ATTACHED LIST OF CAUSES OF
ACTION)

Dated: August 21, 2025

Respectfully submitted,

Natalie Bible
1027 Wilshire Blvd. #949
Los Angeles, CA 90017
(310) 927-0708
nmbible119@gmail.com
Plaintiff, In Pro Per

## CAUSES OF ACTION

Plaintiff alleges the following causes of action against one or more defendants, as specifically identified in each count below, and seeks to hold each defendant liable jointly and severally, where applicable. The acts set forth in the factual allegations constitute predicate offenses supporting Plaintiff's RICO claim, Count 1, and independently give rise to the state and common law claims pled herein. Accordingly, Plaintiff asserts the violations of federal statutory law, the Racketeering Influence and Corrupt Organizations Act (RICO), and supplemental state common law causes of action, each of which provides a separate and independent basis for relief, all tied to the original federal claims. These claims arise from an interrelated course of conduct that simultaneously violates federal law and gives rise to actionable state and common law torts.

## FEDERAL CIVIL COUNTS

**Count I – Civil RICO (Racketeer Influenced and Corrupt Organizations Act), (18 U.S.C. § 1961-1968 )** *Predicate acts include, but are not limited to: (1)Forgery of a U.S. Passport, (2)Wire Fraud, (3)Fraud in Connection with Identification Documents, (4)Destruction or Falsification of Records, (5) Obstruction of Justice, (6) Mail Fraud, (7)Criminal Copyright Infringement, (8)Theft of Trade Secrets, and (9) International Transport of Stolen Property.*

**Count II – Copyright Infringement (17 U.S.C. § 501)**

**Count III – Trade Dress Infringement (15 U.S.C. § 1125(a))**

**Count IV – Theft of Trade Secrets (18 U.S.C. § 1832)**

**Count V - False Designation of Origin (Lanham Act, 15 U.S.C. § 1125(a))**

## STATE AND COMMON LAW COUNTS

**Count VI – Receipt of Stolen Property (PC §496(c))**

**Count VII – Fraudulent Inducement**

**Count VIII – Conversion**

**Count IX – Civil Conspiracy**

**Count X – Aiding and Abetting**

**Count XI – Unjust Enrichment**

**Count XII –  Intentional Interference with Prospective Economic Advantage**

## **PRELIMINARY STATEMENT**

This case is not a private dispute; it is a criminal enterprise—a racketeering scheme orchestrated and masterminded by Defendant Serene Zloof, executed with precision and malice, and advanced through the knowing participation of her mother, Defendant Rosy Zloof, and her long-term roommate and co-collaborator, Defendant Zachary Jones.

Far from an isolated act, the Defendants engaged in a continuing pattern of racketeering conduct designed to secure career advancement, financial enrichment, and public recognition at the Plaintiff's expense. At its core, this enterprise was a career-advancement scam. Defendant Serene Zloof deliberately targeted the Plaintiff because of her elite creative talents and professional standing in the entertainment industry, inducing her into providing mentorship, professional support, financing, and creative services under fraudulent pretenses.

Over the course of nearly two years, Defendants engaged in a sustained racketeering scheme, carrying out multiple predicate acts that together constituted a continuous pattern of criminal conduct, including:

- **Forgery of a U.S. Passport** and **Fraudulent Use of Identification Documents,** through the forgery of a U.S. passport, use of falsified government identification and fraudulent identity representations to induce financial and professional benefits in violation of 18 U.S.C. §§ 1542–1544 and 18 U.S.C. § 1028;

- **Wire Fraud** and **Mail Fraud,** in violation of 18 U.S.C. §§ 1341 and 1343, carried out through more than 200 fraudulently induced electronic financial transfers, repeated electronic communications transmitting falsified documents (including a forged U.S. Passport and fabricated screenshots), solicitation of funds under false pretenses, and the mailing of items procured through fraud;

- **Criminal Copyright Infringement** and **Theft of Trade Secrets,** in violation of 17 U.S.C. § 501 and 18 U.S.C. § 1832, through unauthorized use and distribution of Plaintiff's copyrighted creative works and proprietary assets despite receiving repeated cease-and-desist demands;

- **International Transportation of Stolen Property** and **Conversion:** Defendants unlawfully took, retained, and transported Plaintiff's tangible property (including costumes, wigs, clothing and electronics) and intellectual property (including copyrighted works, trade dress, and audiovisual materials) across state and international borders. This conduct occurred after Defendants had received clear notice of a police report, multiple DMCA takedown notices, and legal demands for return of the property. Such actions constitute willful conversion, intentional disregard of Plaintiff's ownership rights, and violations of federal law governing the interstate and foreign transportation of stolen property.

- **Obstruction of Justice** and **Evidence Tampering,** in violation of 18 U.S.C. § 1519, through falsification of digital evidence, manipulation of court submissions, and dissemination of false statements to conceal the scheme;

These acts were not incidental—they were the backbone of a coordinated plan. The Defendants jointly reaped the benefits: direct cash transfers, luxury goods, professional opportunities, access to elite creative content, production labor, and industry platforms that elevated Defendant Serene Zloof's public profile from obscurity to billboards on Sunset Boulevard and a rapidly growing social media following.

Once Plaintiff uncovered the scheme, the enterprise escalated into obstruction and retaliation. Defendants falsified digital records, manipulated court submissions, tampered with evidence, and disseminated defamatory falsehoods to discredit Plaintiff and shield the fraud from exposure. These acts were integral to maintaining the enterprise's concealment. The scheme further encompassed ongoing copyright infringement and misappropriation of trade secrets, with Plaintiff's proprietary works exploited and distributed even after repeated cease-and-desist notices and hundreds of DMCA takedowns.

Throughout, Defendant Serene Zloof acted as the mastermind, sustaining the enterprise with the knowing participation of Defendant Rosy Zloof and Defendant Zachary Jones. Despite legal intervention, the scheme continues: stolen property remains in Defendants' possession, intellectual property continues to be infringed, and reputational attacks persist.

This was never about personal conflict—it was, and remains, a racketeering enterprise under federal RICO standards, fueled by forgery, fraud, deceit, and theft. The objective was not merely financial gain, but the calculated elevation of Defendant Serene Zloof's career and reputation in the entertainment industry.

These actions form a calculated and sustained racketeering enterprise directed at Plaintiff by Defendants Serene Zloof, Rosy Zloof, and Zachary Jones. Acting as an associated-in-fact enterprise under 18 U.S.C. § 1961(4), Defendants operated with a common purpose: to defraud Plaintiff of money, creative labor, property, intellectual capital, and professional opportunities under false pretenses of partnership, mentorship, and authentic relationship.

Defendant Serene Zloof acted as the architect and ringleader. She presented a forged U.S. passport and fabricated identity to misrepresent her age, identity, and personal history, and used interstate wire communications to transmit that forged document and solicit funds. Through repeated misrepresentations, she induced Plaintiff to transfer:

- Over $47,000 in direct cash and financial transactions;

- Over $54,000 in creative project and branding investments;

- More than $280,000 in uncompensated labor, intellectual property, and creative services.

Instead of honoring these loans and investments, Defendants unlawfully converted Plaintiff's resources and exploited her intellectual property for their own enrichment, constituting a coordinated pattern of racketeering activity under 18 U.S.C. § 1961(1).

Defendants Rosy Zloof and Zachary Jones were not peripheral actors but key participants in the fraudulent enterprise. They knowingly joined, facilitated, and advanced the scheme by aiding and abetting its execution, profiting from its unlawful proceeds, and assisting in the concealment of Defendant Serene Zloof's identity fraud, stolen assets, and misappropriated property. Their conduct was integral to the continuation and success of the enterprise, and they knowingly

derived financial and personal benefit from Plaintiff's stolen assets and intellectual property.

These acts were not isolated wrongs but interlocking components of a continuous criminal enterprise that caused Plaintiff direct financial losses exceeding $380,000, misappropriation of creative works and trade dress, theft of personal property, destruction of evidence, and irreparable harm to her professional reputation. The scheme also radiated outward, ensnaring third parties who were defrauded, slandered, or forced into legal disputes triggered by Defendants' fraudulent acts, further evidencing the scope and continuity of the enterprise.

In addition to the foregoing federal RICO predicate acts, Defendants' conduct also gives rise to parallel civil claims, including Civil Copyright Infringement under Title 17, Misappropriation of Trade Secrets under federal and state law, Fraudulent Inducement, Receipt of Stolen Property, Conversion, Civil Conspiracy, Aiding and Abetting, Unjust Enrichment, and Intentional Interference with Prospective Economic Advantage.

Accordingly, this action seeks treble damages under 18 U.S.C. § 1964(c), punitive damages, legal fees, and injunctive relief. Such relief includes a permanent injunction barring Defendants from further exploiting Plaintiff's works, property, or likeness, and court-ordered destruction of all infringing creative materials in Defendants' possession.

This is not merely a dispute over fraud, theft, or infringement in isolation. At its core, it is a RICO case: Defendants engaged in multiple predicate acts—U.S. Passport Forgery, Identity Fraud, Wire Fraud, Mail Fraud, Criminal Copyright Infringement, Theft of Trade Secrets, International Transportation of Stolen Property, and Obstruction of Justice—woven together into an organized two-year scheme deliberately designed to strip Plaintiff of her financial resources, misappropriate her talents, and exploit her creative labor under false pretenses.

This litigation is therefore properly framed as a civil RICO matter, and it must be adjudicated with the gravity that Congress intended for victims of organized fraud and racketeering.

## JURISDICTION AND VENUE

1. Subject Matter Jurisdiction. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, including the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and other federal statutes prohibiting Passport Forgery, Fraud in Connection with Identification Documents, Mail and Wire Fraud, Obstruction of Justice, Destruction or Falsification of Records, Criminal and Civil Copyright Infringement, International Transport of Stolen Property and Theft of Trade Secrets.

   This Court also has jurisdiction under 28 U.S.C. § 1964(c), which provides a civil cause of action for treble damages to "[a]ny person injured in their business or property by reason of a violation of section 1962." Jurisdiction further exists under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states or engaged in conduct spanning multiple states and international borders. Additionally, this Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal RICO and statutory claims.

2. Venue. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this action occurred within this District. Those events include: the fraudulent inducement of Plaintiff, the use and transmission of a forged U.S. passport, the receipt and concealment of fraudulently obtained funds, the misappropriation and unauthorized exploitation of Plaintiff's copyrighted works and trade secrets, Defendant(s) used Plaintiff's creative works, video materials, and branding elements and falsely designated themselves as the origin, creator, or owner, and the submission of falsified records in separate legal matters and proceedings. Defendant Serene Zloof resides and conducts business in this District; Defendant Zachary Jones resides in this District; and Defendant Rosy Zloof engaged in acts causing injury within this District. Accordingly, this Court is the proper venue for adjudication of all claims.

## PARTIES

3.  Plaintiff NATALIE BIBLE ("Plaintiff") is, and at all times mentioned herein was, a natural person residing in the City of Los Angeles, County of Los Angeles, State of California, at 1027 Wilshire Boulevard #949, Los Angeles, CA 90017.

4.  Defendant SERENE ZLOOF ("Zloof") is, and at all times mentioned herein was, a natural person residing in the State of California. Plaintiff is informed and believes, and based thereon alleges, that Zloof currently resides at 340 N. Hayworth Dr., Apartment #110, in the County of Los Angeles, California.

5.  Defendant ROSY ZLOOF ("Rosy") is, and at all times mentioned herein was, a natural person residing in the State of California. Plaintiff is informed and believes, and based thereon alleges, that Rosy currently resides at 25425 Okeefe Ln., Los Altos Hills, CA 94022, in the County of Santa Clara, California.

6.  Defendant ZACHARY JONES, also known as "Zapper" (hereinafter "Jones") is, and at all times mentioned herein was, a natural person residing in the State of California. Plaintiff is informed and believes, and based thereon alleges, that Jones currently resides at 340 N. Hayworth Dr., Apartment #110, in the County of Los Angeles, California.

## INTRODUCTION AND STATEMENT OF FACTS

This action arises from an ongoing criminal enterprise orchestrated by Defendant Serene Zloof, her mother, Defendant Rosy Zloof and longtime roommate and collaborator, Defendant Zachary Jones. Together, these Defendants engaged in a coordinated pattern of racketeering activity designed to secure career advancement, financial gain, and unlawful enrichment through deception, fraud, and theft.

### The Fraudulent Inducement:

Defendant Serene Zloof fraudulently induced Plaintiff into a relationship under false pretenses of identity, age, partnership, mentorship, and genuine companionship. Defendant misrepresented her true age and background, portraying herself as significantly younger and in need of mentorship, guidance, and professional support. In reality, Defendant Zloof was nearly a decade older than

she claimed and substantially older than Plaintiff. These intentional misrepresentations were designed to manipulate Plaintiff's trust, induce reliance, and secure financial, professional and personal benefits to which Defendant was not entitled.

In reliance on these misrepresentations, Plaintiff was induced to provide financial support, creative resources, and professional opportunities. Defendant's calculated deception created a false foundation of trust designed to entangle Plaintiff financially, emotionally, and professionally for the purpose of exploitation.

### The Expansion of the Scheme:

Once Plaintiff was deceived and financially entangled, Defendant Zloof expanded the criminal enterprise into a full-scale scheme of exploitation, escalating the pattern of fraud into an ongoing criminal enterprise. Plaintiff was fraudulently induced into making over $100,000 in direct financial transactions and contributing more than $280,000 in uncompensated labor, intellectual property, and creative services, all under false pretenses. Rather than honoring these investments, Defendants unlawfully converted Plaintiff's funds, property, and creative works for their own enrichment.

This exploitation was not incidental. It was carried out through a deliberate and coordinated pattern of racketeering activity, that included, but was not limited to:

- Exploitation of Plaintiff's labor and creative services without compensation, coupled with attempts to permanently appropriate these works.

- An ongoing wire fraud scheme that spanned dozens of fraudulent inducements and financial transfers. Through false representations, manipulative misstatements, and calculated deceit, Defendants obtained large sums of money and property from Plaintiff under the guise of legitimate needs, creative projects, or professional obligations.

- Unauthorized commercial release and distribution of copyrighted works without license or consent, depriving Plaintiff of lawful control and revenue.

- Cloning and misappropriation of Plaintiff's protected trade dress, designs, and proprietary graphics to disguise stolen content as Defendants own.

- Leakage and dissemination of Plaintiff's trade secrets and confidential business materials, damaging competitive advantage and marketing position.

- Refusal to repay loans, financial advances, and other funds obtained through deception and false pretenses.

- Receipt and continued retention of funds, property, and assets known to be fraudulently obtained, including refusal to return property upon demand.

- Defendant(s) used Plaintiff's creative works, video materials, and branding elements and falsely designated themselves as the origin, creator, or owner. Such misrepresentations caused confusion, mistake, and deception among consumers, industry professionals, and the general public as to the true source of the works, in violation of the Lanham Act.

- International transportation and public display of stolen property to flaunt ill-gotten gains.

- Defamation, slander, and retaliatory smear campaigns designed to discredit Plaintiff, obstruct justice, and conceal the enterprise.

- Tampering with evidence and digitally altering documents, communications, and exhibits submitted in legal proceedings.

- Interference with Plaintiff's professional contracts, industry alliances, and prospective economic relationships, undertaken to sabotage career opportunities.

- Defamation of third-parties and coordinated efforts to manipulate or intimidate witnesses in order to shield Defendants' misconduct.

- Fraudulent inducement of third-party investments and theft of third-party project funds, thereby broadening the scope of the criminal enterprise.

This conduct was not incidental but integral to the Defendants criminal enterprise, reflecting a deliberate strategy to defraud, exploit, conceal, and retaliate against Plaintiff while securing unlawful financial and professional advantage.

## Role of the Co-Defendants:

Defendants Rosy Zloof and Defendant Zachary Jones were not incidental
bystanders but core operatives in the racketeering enterprise led by Defendant
Serene Zloof. Each knowingly advanced, concealed, and perpetuated the scheme
by retaining stolen property, reinforcing fraudulent misrepresentations, enabling
retaliatory conduct, and directly benefitting from funds fraudulently induced from
Plaintiff. Their involvement extended well beyond passive support; they served as
the arm and legs of Defendant Serene Zloof's criminal enterprise, ensuring its
continuity and effectiveness. Defendant Rosy Zloof knowingly bound herself to the
enterprise by providing material support, concealment, and logistical assistance
that sustained and advanced the fraudulent scheme.

She personally received fraudulently induced funds in the form of airline tickets,
gift cards, ground travel, event tickets, meals and cash, which Defendant Serene
Zloof funneled to her from Plaintiff's resources. Evidence shows Defendant Rosy
Zloof was not deceived but complicit: she openly inquired in writing with Plaintiff
about how to "monetize" Defendant Zloof's career," thereby revealing intent to
exploit Plaintiff's creative labor for profit. She also had direct knowledge of
Defendant Serene Zloof's forged identity documents, false age representations, and
fraudulent background claims — knowledge corroborated by Defendant Zloof's
own written and verbal admissions.

Defendant Zachary Jones, likewise, was an active co-conspirator. He unlawfully
retained Plaintiff's stolen property, including a television and other goods
identified in an April 2025 LAPD Grand Theft police report, despite repeated
demands for return. He further benefitted from Plaintiff's fraudulently induced
funds through entertainment activities, trips to adrenaline parks, whitewater
rafting, maid services, rent, bills, utilities, travel, meals, groceries, and general
lifestyle support.

Defendant Jones accompanied Defendant Serene Zloof to legal proceedings —
distinct from the present matter — where he supported her retaliatory false
accusations and encouraged the continuation of theft and fraud. He also
accompanied her to music festivals and trips where she flaunted Plaintiff's stolen
costumes and wigs, mocking the theft as a spectacle.

Both Defendants Rosy Zloof and Zachary Jones were aware of Defendant Zloof's forged passport, false age misrepresentations, and background fraud for the entirety of her relationship with Plaintiff. Despite this knowledge, they knowingly chose to perpetuate and sustain the scheme.

Defendants' conduct constituted intentional participation in the enterprise and encompassed multiple predicate acts under 18 U.S.C. § 1961(1), including: Fraud in Connection with Identification Documents (18 U.S.C. § 1028); Interstate and International Transportation of Stolen Property (18 U.S.C. § 2314); Receipt and Concealment of Stolen Property (18 U.S.C. § 2315); Wire Fraud (18 U.S.C. § 1343); Conspiracy to violate RICO (18 U.S.C. § 1962(d)); and Aiding and Abetting the foregoing acts (18 U.S.C. § 2).

In addition, these same acts constitute Conversion under California law (common law; Civ. Code § 3336) and misappropriation of Plaintiff's property and creative works.

By knowingly aiding and abetting the enterprise's Fraud, Conspiracy, and Unjust Enrichment, Defendants Rosy Zloof and Zachary Jones became active co-conspirators in a sustained, multi-year pattern of racketeering activity. Their roles were neither incidental nor peripheral; both bound themselves as integral key participants in a criminal enterprise designed to defraud, conceal, retaliate, and unjustly enrich at Plaintiff's expense.

### Defendants Wire Fraud Scheme:

Plaintiff alleges that Defendant Zloof engaged in a systematic scheme to defraud, inducing Plaintiff to send over 200 separate financial transfers under false pretenses. Defendant falsely presented herself as a 35-year-old Berkeley graduate, concealed her true age and identity, and utilized a forged U.S. Passport to perpetuate the deception. Each transfer, conducted through interstate and international wire systems, constitutes a distinct act of wire fraud in violation of 18 U.S.C. § 1343.

Collectively, these hundreds of fraudulently induced transactions form a sustained pattern of racketeering activity and directly underpin Plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–

1968. These funds and purchases were funneled directly to Defendant Serene Zloof, as well as to Defendant Rosy Zloof and Defendant Jones, constituting repeated acts of wire fraud in violation of federal law. The volume and brazenness of these transactions demonstrate a coordinated criminal enterprise designed to defraud, enrich, and conceal the unlawful conduct of all three Defendants.

**Retaliation and Obstruction:**

When Plaintiff uncovered the full scope of the fraudulent scheme in April 2025 and pursued legal remedies, Defendants escalated their misconduct through retaliation and obstruction of justice. Defendant Zloof submitted manipulated evidence into court proceedings, defamed Plaintiff with false statements, and orchestrated third-party interference to intimidate and silence Plaintiff. These retaliatory actions were not isolated incidents but integral to the broader RICO conspiracy, undertaken to shield the enterprise from accountability and to perpetuate its unlawful gains.

**Scope of the Evidence:**

The breadth of evidence in this case is overwhelming: more than 2,000 pieces of corroborating evidence—including raw timestamped videos, audio recordings, text messages, photographs, financial records, and written correspondence—that directly capture Defendant Zloof's own admissions, contradictions, and fraudulent representations. In addition, Plaintiff maintains approximately 1,500 pieces of personal audiovisual material, more than 13,000 photographs, and approximately 2,500 pieces of professional video documenting private, personal, and professional interactions with Defendant Zloof which document the enterprise's ongoing pattern of racketeering activity across multiple jurisdictions and involving multiple victims.

The evidentiary record also includes photographs, videos, and written communications involving Defendants Rosy Zloof and Zachary Jones, documenting their participation in, benefit from, and awareness of the U.S. Passport Forgery, Fraudulent Inducement, Theft and Conspiracy alleged herein.

Every factual allegation set forth in this Complaint is supported by contemporaneous documentary and audiovisual evidence, ensuring Plaintiff's claims are not speculative but demonstrably verifiable under federal evidentiary

standards. Accordingly, all claims are substantiated by substantial documentation
and thousands of pieces of admissible evidence, encompassing video and
photographic records capturing nearly the entirety of Plaintiff's two-year
relationship with Defendant Zloof and the operation of the racketeering enterprise.

**Conclusion:**

This case is a textbook RICO scheme: a coordinated criminal enterprise carried out
through calculated deception, fraudulent inducement, theft, copyright infringement,
obstruction, and organized retaliation against a documented crime victim.

## FACTUAL ALLEGATIONS

7. Defendant Serene Zloof is currently the subject of multiple active criminal
investigations involving serious alleged offenses in at least two jurisdictions:
Los Angeles County and Riverside County. The Los Angeles Police Department
has formally submitted a warrant request to the Los Angeles County District
Attorney's Office, which remains under prosecutorial review, while the
Riverside County Sheriff's Department has likewise initiated investigative
proceedings into related fraudulent activities. These law enforcement matters
remain open and active as of the date of this filing and are corroborated by
official police reports, warrant request submission, and verified supporting
documentation in Plaintiff's possession.

8. Defendant Zloof's conduct is not isolated, accidental, or incidental, but instead
forms part of a broader pattern of fraudulent schemes and criminal exposure
spanning multiple jurisdictions. Plaintiff's claims arise against this backdrop of
continuing criminal investigations, evidencing Defendant's ongoing
participation in a pattern of racketeering activity designed to deceive, obtain
career advancement, property, and financial resources under false pretenses, and
evade accountability. The factual record demonstrates repeated schemes
involving forgery, fraud, theft, and retaliatory harassment, all of which share a
common purpose, method, and victimization strategy.

Accordingly, Plaintiff's civil RICO allegations are firmly grounded in the
continuity and relatedness of Defendant's misconduct, which is corroborated
not only by Plaintiff's own extensive evidentiary record but also by official law
enforcement investigations presently underway. This context underscores the

gravity of the allegations and situates Plaintiff's claims squarely within the framework of a racketeering enterprise as defined under 18 U.S.C. § 1961 et seq.

9. Plaintiff and Defendant Serene Zloof met in or around August 2022 when Plaintiff was hired to provide post-production services on a mutual film project. The parties later entered into a personal and professional relationship beginning in or around August 2023.

10. Plaintiff is a multi-award-winning filmmaker, highly sought-after photographer, graphic designer and producer with over twenty years of experience in the entertainment industry. She has consistently produced and facilitated creative labor on high-level, award-winning projects of international acclaim. Plaintiffs creative work has been screened and featured around the world and has received hundreds of awards.

11. Defendant Zloof deliberately targeted Plaintiff because of her established creative talent, reputation, financial resources, and access to valuable industry networks. Her conduct was not incidental but calculated—employing false representations of age, identity, and background, including the e-mail transmission of a forged U.S. passport, to induce reliance and secure substantial financial and professional benefits. These fraudulent acts were not isolated but carried out with the assistance of her mother, Defendant Rosy Zloof, and her longtime roommate and collaborator, Defendant Zachary Jones.

Together, the Defendants engaged in a coordinated and continuing pattern of racketeering activity, including wire fraud, passport forgery, financial fraud, and intellectual property theft, all for the purpose of extracting funds, property, and career advancement opportunities. As a direct and foreseeable result of this racketeering scheme, Plaintiff sustained injuries exceeding $380,000 in financial losses, diverted funds, uncompensated labor, theft of intellectual property and creative content, significant reputational damage, and ongoing harm from Defendants' retaliatory conduct.

12. In or around August 2023, Defendant Serene Zloof began deliberately pursuing Plaintiff, ingratiating herself through persistent flattery and by leveraging Plaintiff's established talents and professional reputation. Defendant cultivated what initially appeared to be a friendship but was, in fact, a calculated effort to

secure Plaintiff's mentorship and professional resources under false pretenses. During this period, Defendant repeatedly solicited Plaintiff's assistance with creative work, including music production, graphic design, album cover art, electronic press kits, photoshoots, and video content production.

These requests were initially framed as collaborative opportunities but, as evidenced by written communications, personal videos, audio recordings, and project records, were in reality the first stage of Defendant's broader pattern of racketeering activity involving multiple federal predicate acts, including Wire Fraud (18 U.S.C. § 1343), Mail Fraud (18 U.S.C. § 1341), Fraud and Related Activity in Connection with Identification Documents and U.S. Passport Forgery (18 U.S.C. §§ 1028, 1543), Destruction, Alteration, or Falsification of Records (18 U.S.C. § 1519), Obstruction of Justice and Witness Tampering (18 U.S.C. §§ 1503, 1512), International Transportation of Stolen Property (18 U.S.C. § 2314), Criminal Copyright Infringement (18 U.S.C. § 2319), and Theft of Trade Secrets (18 U.S.C. § 1832).

13. During the course of the relationship, Defendant Serene Zloof knowingly and intentionally misrepresented critical aspects of her identity, including—but not limited to—her age and educational background, falsely claiming she was in her mid-30s and younger than Plaintiff, a deception sustained through verbal statements, written communications, and professional profiles, and further misrepresenting on LinkedIn and other platforms that she had earned a bachelor's degree from the University of California, Berkeley.

These falsehoods were not incidental but calculated acts designed to secure Plaintiff's trust and manipulate the relationship into a false mentorship dynamic, through which Defendant Zloof induced Plaintiff to provide substantial financial contributions, uncompensated creative labor, and access to professional opportunities while concealing her true identity and intent. Plaintiff relied upon these fabrications, which later culminated into a romantic and professional relationship predicated upon fraudulent inducement and false identity, and Defendant Zloof knowingly sustained these misrepresentations throughout the relationship for the purpose of obtaining creative labor, money, property, and intellectual property belonging to Plaintiff.

This conduct—documented through written communications, video and audio recordings, and corroborating third-party witness statements—constitutes

predicate acts under the Racketeer Influenced and Corrupt Organizations Act (RICO), including Wire Fraud (18 U.S.C. § 1343), Passport Forgery and Fraud in Connection with Identification Documents (18 U.S.C. §§ 1542, 1028), Destruction or Falsification of Records (18 U.S.C. § 1519), Obstruction of Justice (18 U.S.C. § 1503), Criminal Copyright Infringement (18 U.S.C. § 2319), and Theft of Trade Secrets (18 U.S.C. § 1832), while also supporting related state-law claims for Fraudulent Inducement, Conversion, Unjust Enrichment, Civil Conspiracy, Trade Dress Infringement, and Copyright Infringement.

14. In or around November 2023, Defendant Serene Zloof escalated her fraudulent scheme by directly soliciting substantial financial contributions from Plaintiff under the dual guise of a romantic relationship and professional collaboration on her creative projects. Defendant Zloof expressly represented these solicitations as legitimate loans or investments and repeatedly assured Plaintiff that all sums advanced would be repaid in full regardless of the projects' success or failure.

These representations were knowingly false at the time they were made and formed part of Defendant's broader pattern of fraudulent inducement, unjust enrichment, fraud in connection with identification documents, receipt of stolen property, and conversion, in violation of California Penal Code §§ 484 and 487. Defendant's conduct was not incidental but intentional, designed to mislead Plaintiff, to obtain creative labor, property and funds under false pretenses, and to permanently deprive Plaintiff of tangible and intellectual property for Defendant's personal and professional gain.

Defendant Zloof strategically presented herself as a younger, emerging artist in need of mentorship and guidance, a misrepresentation that Plaintiff reasonably relied upon when extending both financial support and extensive creative labor. In truth, Defendant was in fact substantially older than Plaintiff, and she never intended to honor her repayment promises or act in good faith. Rather such misstatements were part of a broader fraudulent scheme designed to exploit Plaintiff's mentorship, financial support, and creative resources.

Plaintiff further operated under the good-faith belief that the creative works being developed were original and new projects; however, subsequent evidence

revealed that Defendant Zloof had in fact been recycling and repurposing much
of this same material for nearly two decades.

This deliberate deception not only induced Plaintiff to provide unpaid labor and
financial contributions under false pretenses but also ensured Defendant's
unjust enrichment by exploiting Plaintiff's professional resources, creative
labor, reputation, and production infrastructure while concealing the true nature
and value of the projects.

This conduct constitutes a predicate act of wire fraud supporting Plaintiff's
RICO claims, as Defendant utilized electronic communications—including text
messages, emails, and banking applications—to misrepresent her intentions and
obtain money without lawful entitlement.

Plaintiff's allegations are corroborated by extensive evidence, including
financial records documenting the specific transfers, written text and email
communications acknowledging the loans and promising repayment, audio and
video recordings contemporaneous with the solicitations in which Defendant
reaffirmed her promises, and third-party witness statements confirming
Defendant's misrepresentations.

15. In December 2023, while Defendant Zloof was traveling in New Zealand,
Plaintiff advanced her project funds and writing pay, relying on Defendant
Zloof's false representations regarding her age, identity, background, and
repayment obligations. Defendant used these fraudulently induced funds for
personal leisure activities with her longtime roommate and co-conspirator,
Defendant Zachary Jones, including white-water rafting, an adrenaline park,
meals, and a skyline theme park visit.

This conduct—corroborated by written communications, photographs, financial
records, and video evidence—demonstrates that Defendant Jones directly
benefitted from Plaintiff's fraudulently induced funds and was unjustly enriched
through his participation in activities financed by the fraudulent enterprise.
Accordingly, this act constitutes part of the racketeering enterprise, supporting
predicate acts of wire fraud, as well as state-law claims for conversion, civil
conspiracy, and unjust enrichment.

16. In January 2024, Plaintiff began funding development of Defendant Serene
Zloof's proposed television pilot using her own personal funds. Defendant

Zloof expressly promised—both orally and in written communications—that all financial contributions would be treated strictly as loans, and that Plaintiff would be fully repaid regardless of whether the pilot was ultimately sold, distributed, or produced to completion.

Relying on these repeated assurances, Plaintiff advanced substantial sums and contributed extensive unpaid labor towards the pilot. Defendant Zloof further reinforced her inducements by emphasizing her passion for the project and by invoking her fabricated identity as a younger, emerging artist in need of guidance and financial support. At all times, Plaintiff's financial contributions and professional efforts were given in reliance upon these false pretenses.

Defendant unequivocally represented that Plaintiff would be reimbursed for both her monetary outlays and her significant professional labor, irrespective of the project's commercial success. These representations were knowingly false, made with the intent to induce Plaintiff's reliance and secure continued funding and labor under fraudulent circumstances. Defendant Zloof's conduct, even when undertaken individually, was carried out in furtherance of the racketeering enterprise and therefore qualifies as a predicate act under RICO.

17. During the funding and production of the pilot, Defendant Zloof fraudulently induced Plaintiff to incur numerous additional expenses beyond direct cash transfers. Defendant insisted that Plaintiff pay for office space in Los Angeles so that she could "write" and prepare project materials, and further induced Plaintiff into paying to register her projects with the Writers Guild of America.

Defendant Zloof represented these projects as "new, original content" created for the enterprise, when in fact she had been recycling and peddling the same concepts for more than a decade — facts corroborated by video evidence in which Defendant Zloof later admits the original dates of conception. Plaintiff was deceived into believing the works were new, fresh, intellectual property and funded the registrations and associated costs under that misrepresentation.

Simultaneously, Defendant Zloof insisted that her mother, Defendant Rosy Zloof, provide costuming services for the production and further demanded that Plaintiff cover the costs of flying her to Las Vegas after filming. Plaintiff was required to purchase Rosy Zloof's airline ticket, pay for her ground transportation to and from set, and fund additional craft services expenses.

These expenditures—substantiated by receipts, transaction records, and video evidence—were secured under the same fraudulent pretense of Defendant Zloof's fabricated age, identity, and professional credentials, misrepresentations of which Defendant Rosy Zloof was fully aware. By knowingly accepting and benefitting from these fraudulently induced expenditures, Defendant Rosy Zloof became a direct participant in the racketeering enterprise, further supporting predicate acts of Wire Fraud and Receipt of Stolen Property, as well as state-law claims for Conversion, Civil Conspiracy, and Unjust Enrichment.

18. During this same period, Defendant Serene Zloof also began soliciting additional personal loans from Plaintiff to cover her expenses, including bills and other daily needs, as well as to purchase additional items and meals Defendant Rosy Zloof. Plaintiff provided these funds directly, relying not only on Defendant's repeated explicit promises of repayment, but also on the false representations Defendant had made about her age, identity, relationship intentions, and professional background.

The fraudulent nature of these solicitations is corroborated by multiple forms of evidence. Defendant expressly confirmed receipt of funds, made written requests for loans, and issued written promises to repay those loans in full. These communications demonstrate Defendant's acknowledgment of the debts and her obligation to honor them, yet the assurances were knowingly false when made. In reality, Defendant's calculated misrepresentations were deliberately designed to induce Plaintiff into providing financial support under false pretenses.

As such, what Defendant Zloof presented as legitimate requests for assistance were, in truth, fraudulent transactions at their core. Plaintiff's reliance on Defendant's assurances and fabricated identity was not only reasonable, but directly targeted by Defendant Zloof as part of her larger pattern of deception and forms part of the pattern of racketeering activity alleged herein..

19. As part of this sustained pattern of deception, on or about March 15, 2024, Defendant Serene Zloof knowingly and intentionally transmitted to Plaintiff, by e-mail, a digitally forged United States Passport purporting to be her legitimate government-issued identification. This forged document, which constitutes a falsified federal record, falsely listed her year of birth as "1988," thereby misrepresenting her age by more than ten years. Such conduct constitutes

Forgery of a United States Passport in violation of 18 U.S.C. § 1543, Fraud and Related Activity in Connection with Identification Documents under 18 U.S.C. § 1028, and Falsification of Federal Records under 18 U.S.C. § 1519. The knowing use of interstate wires to transmit the forged passport also constitutes Wire Fraud under 18 U.S.C. § 1343.

This act was not an isolated misrepresentation but a deliberate predicate offense within the broader racketeering enterprise, serving to induce financial transfers, secure unlawful benefits, and obstruct discovery of Defendant's true identity. In conjunction with other predicate acts—including Mail Fraud, International Transportation of Stolen Property, Criminal Copyright Infringement, and Theft of Trade Secrets—Defendant's passport forgery demonstrates a calculated scheme that meets the statutory pattern-of-racketeering requirement under 18 U.S.C. § 1961 et seq. and further establishes that the fraudulent enterprise operated through coordinated deception, concealment, and unlawful enrichment.

20. Under both federal and California law, the act of digitally altering any form of government-issued identification with the intent to defraud constitutes felony-level forgery and fraud. Specifically, in the context of a United States Passport, there exists no legal mechanism for electronic issuance or alteration. All U.S. passports are physical government documents, issued exclusively by the U.S. Department of State, incorporating strict anti-fraud security features such as embedded watermarks, biometric identifiers, holograms, and encryption.

The only way to create a "digital passport" is through fraudulent means—typically by photographing or scanning a legitimate passport and then manipulating it with editing software to alter critical identifiers such as the date of birth, place of issuance, or personal details. Such conduct constitutes forgery under 18 U.S.C. § 1543 and related federal statutes, as well as forgery and falsification of documents under California Penal Code §§ 470–471.5.

Legally, the intentional alteration of government identification by digital means is indistinguishable from traditional, physical forgery. Courts recognize no distinction: whether by pen, printer, or digital editing, the falsification of a federal record with intent to deceive or obtain benefit constitutes forgery and fraud, and is punishable under both federal and state law.

By transmitting this forged passport electronically with intent to deceive, Defendant engaged in conduct that falls squarely within the definition of Federal Wire Fraud under 18 U.S.C. § 1343, which prohibits the use of interstate wires—including e-mail—for the purpose of executing any scheme to defraud or obtain money or property by means of false or fraudulent pretenses.

Defendant's objective was clear: to deceive Plaintiff regarding her age and identity in order to induce reliance, secure mentorship, career advancement, and wrongfully obtain personal funds, uncompensated labor, and professional opportunities. Written and video evidence further demonstrate Defendant's deliberate digital alteration of the forged United States Passport, which she transmitted by e-mail from her device in Los Angeles to Plaintiff in Idyllwild with the intent to deceive. This forged passport—listing a false year of birth more than a decade younger than Defendant's true age—constitutes a falsified federal record and a racketeering predicate under 18 U.S.C. §§ 1543 (passport forgery), 1028 (fraud and related activity in connection with identification documents), and 1519 (falsification of records). The evidence establishes a complete chain of custody, including Defendant Zloof's own admissions, recorded in writing, acknowledging that she transmitted the forged passport on March 15, 2024, affirming both her intent to deceive and her claimed ownership of the falsified document.

Moreover, this act was not isolated, but undertaken with full knowledge and complicity of her co-defendants. Defendant Zloof was adamant that both Defendant Rosy Zloof and Defendant Zachary Jones were aware of her true age and the existence of the forged passport, making their continued participation and benefit from the scheme further evidence of a coordinated racketeering enterprise. These coordinated actions constitute part of the continuous pattern of wire fraud, forgery, falsification of records, and conspiracy that form the foundation of the racketeering scheme alleged herein.

21. This forgery was not incidental but intentional, designed to create the false impression that Defendant was significantly younger and therefore in need of mentorship and guidance. This false portrayal was deliberately calculated to present Defendant Zloof as both younger and more desirable, suggesting long-term industry potential, while simultaneously fabricating a persona of vulnerability and need for career guidance. This deception was instrumental in

inducing Plaintiff to provide mentorship, financial backing, and professional opportunities—resources Defendant deliberately sought and exploited to advance her own creative career under false pretenses. Accordingly, this act further supports the racketeering enterprise through forgery, fraud and theft predicates.

22. Plaintiff reasonably relied upon Defendant Zloof's fraudulent misrepresentations, including her false statements regarding her intentions to pursue a genuine personal and romantic relationship. Absent these material deceptions, Plaintiff would not have entered into a mentorship or intimate relationship with Defendant, nor would Plaintiff have extended substantial financial, creative, and professional resources to her. Defendant's misrepresentations were deliberate and material, designed to secure Plaintiff's trust and induce reliance.

As a direct and proximate result of this reliance, Plaintiff sustained significant damages, including the loss of funds. By digitally forging her birth year and fabricating her age in an official government document, Defendant Zloof reinforced a broader pattern of predicate acts under 18 U.S.C. § 1961(1), contributing to the pattern of racketeering activity, as well as fraudulent inducement, identity fraud, receipt of stolen property, and calculated manipulation that she sustained throughout the relationship.

23. In addition to presenting a forged U.S. passport, Defendant Zloof repeatedly maintained her false age, purported genuine relationship intentions and fabricated educational background through verbal statements, written text messages, and recorded video communications—all of which consistently reflected the false identity she constructed and perpetuated.

As a direct result of this deception, Plaintiff was fraudulently induced to contribute tens of thousands of dollars toward Defendant's personal expenses, family needs, and career projects, and to provide hundreds of thousands of dollars' worth of uncompensated creative labor.

These contributions were neither gifts nor voluntary donations, but were made in reliance on Defendant's false representations and under the expectation of repayment, profit-sharing, or collaboration. Defendant Zloof's conduct, even

when undertaken individually, was carried out in furtherance of the racketeering enterprise and therefore qualifies as a predicate act under RICO.

24. After nearly three years of knowing Defendant Zloof, Plaintiff did not discover the truth until March 2025. At that point, it became clear that Defendant's misrepresentations were not accidental or the product of misunderstanding, but part of a sustained and willful pattern of fraud and intentional deception forming the backbone of a racketeering enterprise.

Despite Plaintiff's growing suspicions and independent verification efforts, Defendant Zloof continued to maintain these falsehoods. When questioned directly about her age and background in March 2025, she deflected by instructing Plaintiff to "ask" her longtime roommate, Defendant Zachary Jones, or her mother, Defendant Rosy Zloof—both of whom had personally benefitted from Plaintiff's financial contributions and knowingly furthered the scheme. Their participation demonstrates not only aiding and abetting but also association-in-fact within the enterprise, satisfying the "operation and management" requirement under RICO.

Even after Plaintiff conducted background checks and reviewed family social media records that revealed contradictory information, Defendant Zloof persisted in maintaining that she was in her mid-30s in written, verbal, and recorded communications. These sustained misrepresentations underscore the deliberate and collaborative nature of the fraud, laying the foundation for the financial exploitation and professional manipulation that followed. In this way, Defendants' coordinated actions constituted predicate acts of wire fraud, mail fraud, and fraudulent use of identification documents under 18 U.S.C. §§ 1341, 1343, and 1028, which, taken together, reflect the larger pattern of racketeering activity under 18 U.S.C. §§ 1961–1968 designed to unlawfully obtain money, property, and professional advantage.

25. When confronted with the forged U.S. passport in March 2025, Defendant Zloof responded in writing that this was her "truth," her "life," and her "identity." She further stated, "I guess I better lawyer up," demonstrating her awareness of the illegality. She then dismissed Plaintiff's concerns, adding that she "didn't give a fuck" what Plaintiff thought, and directed her to "ask her mom" for confirmation. Plaintiff did in fact later contact Defendant Zloof's

mother, Defendant Rosy Zloof, forwarding the forged U.S. passport image and explaining the fraud.

Text message records establish that Defendant Rosy Zloof reviewed the fraudulent passport communications in real time, but ceased responding immediately after Plaintiff directly confronted her with evidence that Defendant Serene Zloof had digitally forged her U.S. passport and defrauded Plaintiff of thousands of dollars.

This deliberate silence and withdrawal, in the face of direct notice of fraud and forgery, demonstrates Defendant Rosy Zloof's full knowledge of the unlawful scheme and her conscious decision to distance herself once confronted.

Plaintiff messaged Defendant Rosy Zloof, multiple times, begging for answers and repayment for the fraud that had been uncovered. Plaintiff made repeated written pleas to Defendant Rosy Zloof, expressly raising the issue of the falsified passport, fraudulent inducement, and ongoing theft, and asking directly: "Who is going to pay me back?" Despite clear notice of the fraud and her own financial benefit from Plaintiff's contributions, Defendant Rosy Zloof willfully ignored these communications, refusing to respond at any point or intervene. This deliberate silence—following receipt of explicit evidence of U.S. Passport Forgery—constitutes knowing participation and complicity in the racketeering enterprise. By failing to act, acknowledge, or even deny knowledge, Defendant Rosy Zloof demonstrated conscious disregard of Plaintiff's rights and a tacit agreement to allow the fraudulent scheme to continue, thereby furthering the continuity, concealment, and success of the RICO enterprise.

Such conduct also directly supports Plaintiff's claims against Defendant Rosy Zloof for Fraud in Connection with Identification Documents (18 U.S.C. § 1028), Civil Conspiracy, Aiding and Abetting, Conversion and Unjust Enrichment, as Defendant Rosy Zloof knowingly benefited from Plaintiff's reliance while participating in the broader scheme.

26. Defendant Zloof eventually admitted to Plaintiff that the passport was forged, and later in an audio recording sent to Plaintiff—attempting to minimize the severity—claimed she "didn't think it would be a big deal." She further asserted that this was the identity document "everyone gets," and conceded she never

would have told the truth had Plaintiff not independently discovered it. These communications—captured in text messages and audio recordings—provide clear, direct evidence of Defendant Zloof's knowledge, intent, and willful deception.

Such conduct constitutes a predicate act of Forgery and Fraud in Connection with Identification Documents in violation of 18 U.S.C. § 1028 and Forgery of a United States Passport under 18 U.S.C. § 1543. When coupled with the use of interstate electronic communications to transmit the falsified passport and subsequent audio/text messages, this conduct also satisfies the elements of Wire Fraud under 18 U.S.C. § 1343. Taken together, these acts further the pattern of racketeering activity under 18 U.S.C. §§ 1961–1968, demonstrating that Defendant Zloof's deception was not an isolated instance but a deliberate, ongoing part of an enterprise scheme to defraud Plaintiff for financial and professional gain.

27. Defendant Zloof eventually admitted to Plaintiff that the passport was forged, and later in an audio recording sent to Plaintiff—attempting to minimize the severity—claimed she "didn't think it would be a big deal." She further asserted that this was the identity document "everyone gets," and conceded she never would have told the truth had Plaintiff not independently discovered it. These communications—captured in text messages and audio recordings—provide clear, direct evidence of Defendant Zloof's knowledge, intent, and willful deception. This conduct was not incidental, but part of a broader racketeering enterprise and fraudulent scheme designed to misrepresent her identity, conceal the truth, and unlawfully extract money, services, and opportunities from Plaintiff.

These discoveries were not immediate but required Plaintiff's persistent verification efforts, underscoring both the sophistication of the fraud and the extent of Plaintiff's reliance on Defendant's misrepresentations. These acts of layered deception fundamentally shattered the foundation of the personal and professional relationship between the parties and caused Plaintiff significant financial, personal, and professional damages. This conduct is further substantiated by documented evidence, including written communications, digital records, contemporaneous video recordings and corroborating witness

testimony, and constitutes a pattern of racketeering activity as defined under 18 U.S.C. § 1961.

28. The purported year-and-a-half romantic relationship between Plaintiff and Defendant was never grounded in authentic care or mutual affection. Rather, it was a calculated façade deliberately constructed by Defendant Zloof to manipulate, exploit, and defraud Plaintiff as part of a sustained fraudulent scheme and racketeering enterprise. Defendant employed false affection, staged emotional attachment, and coercive intimacy as mechanisms of control, designed to secure Plaintiff's trust, suppress suspicion, and facilitate the extraction of financial resources, uncompensated creative labor, and professional opportunities under false pretenses.

Evidence demonstrates that these actions were not accidental but part of a deliberate and premeditated racketeering scheme as defined under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1962. Defendant forged a federal identification document in violation of 18 U.S.C. § 1543, misrepresented her age and academic background, and fabricated a false identity to appear younger than Plaintiff—thereby securing Plaintiff's trust, mentorship, and continued financial and creative contributions under false pretenses.

These deceptions were systematically reinforced through verbal assurances, written text messages, and recorded video communications, all of which corroborate the false persona Defendant manufactured and maintained for the purpose of fraudulent inducement and unlawful enrichment. Such conduct constitutes a pattern of racketeering activity, including predicate acts of wire fraud (18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), passport forgery (18 U.S.C. § 1543), obstruction of justice (18 U.S.C. § 1503), and copyright infringement (18 U.S.C. § 2319). Collectively, these predicate acts were executed as part of an ongoing criminal enterprise designed to defraud, exploit, and retaliate against Plaintiff.

29. Plaintiff entered the relationship in good faith, believing in mutual affection and shared professional goals. In reality, the relationship was a calculated and manipulative performance orchestrated to extract financial value, creative labor, and resources for Defendant Zloof's personal and career advancement. Defendant's subsequent conduct—including Fraudulent Inducement, Forgery of

a United States Passport (18 U.S.C. § 1543), Wire Fraud (18 U.S.C. § 1343), Trade Dress and Copyright Infringement (17 U.S.C. §§ 101 et seq.), Harassment, and Retaliation—confirms the exploitative nature of the scheme and her ongoing refusal to accept accountability.

No individual acting in genuine good faith would forge a federal identification document, repeatedly misrepresent their identity and age, or induce another to provide tens of thousands of dollars in cash transfers and hundreds of thousands of dollars in uncompensated intellectual property and creative labor. Defendant Zloof repeatedly acknowledged these funds as loans to be repaid, both in writing and verbally, yet failed to return a single dollar.

Rather than honoring her obligations, Defendant escalated the misconduct by retaliating against Plaintiff after the fraud was uncovered, engaging in smear campaigns, third-party collusion, and continued exploitation of Plaintiff's copyrighted content without any assignment of rights. These acts, undertaken with the knowing assistance of co-conspirators Defendant Rosy Zloof and Defendant Zachary Jones, form part of a racketeering enterprise under 18 U.S.C. § 1961 et seq., supported by multiple predicate acts including wire fraud, mail fraud, passport forgery, fraud in connection with identification documents, obstruction of justice, conversion, and copyright infringement.

This deliberate course of conduct also constitutes Fraudulent Inducement, Unjust Enrichment, Intentional Interference with Prospective Economic Advantage, and Civil Conspiracy—each of which serves as both independent causes of action and predicate acts within the broader racketeering enterprise designed to defraud, exploit, and retaliate against Plaintiff.

30. By wrongfully retaining the financial, professional, and creative benefits obtained under false pretenses, Defendants Serene Zloof, Rosy Zloof, and Zachary Jones have collectively engaged in a coordinated fraudulent scheme that constitutes participation in a racketeering enterprise under 18 U.S.C. §§ 1961–1962. Defendants' conduct created a clear entitlement to restitution, compensatory damages, and punitive damages under both federal and state law.

31. Defendant Serene Zloof's exploitation of intimacy as a manipulative tool demonstrates a disturbing pattern of deception and calculated financial exploitation, while Defendants Rosy Zloof and Zachary Jones directly

benefitted from, facilitated, and furthered this scheme by accepting travel, services, and lifestyle expenditures funded through Plaintiff's fraudulently induced contributions. This enterprise inflicted severe financial and professional harm on Plaintiff, who at all times acted in reliance on Defendants' fraudulent misrepresentations.

These allegations are directly supported by Plaintiff's extensive evidentiary record—including written communications, audio recordings, video evidence, and corroborating third-party statements—which collectively substantiate every element of Plaintiff's federal and state claims, including racketeering, fraud, conspiracy, and unjust enrichment.

32. Plaintiff further alleges that Defendant Zloof exhibited extreme and unpredictable behavioral shifts during the course of the relationship, including abrupt changes in demeanor, identity presentation, and emotional affect depending on the individuals present. These observable shifts—alternating between vulnerability, detachment, rage, and grandiosity—were not incidental but deliberately employed to manipulate Plaintiff's perception of events, induce reliance, and deflect accountability. Defendant Zloof also used these shifts strategically to influence third parties, presenting herself as an innocent victim in order to obscure her misconduct and secure sympathy or protection from those around her.

Plaintiff possesses extensive video evidence directly documenting these manipulative patterns, including numerous instances in which Defendant Zloof is captured on video contradicting her own prior statements, telling different stories and making materially false representations. These contradictions provide clear, objective proof of Defendant Zloof's pattern of deception, further supporting Plaintiff's allegations of fraud, intentional misrepresentation, and manipulation of both Plaintiff and third parties.

Such patterns are consistent with Defendant Zloof's broader scheme of deception, fraudulent inducement, and exploitation, and they directly inflicted severe financial harm on Plaintiff, as well as significant professional harm through the diversion of resources, lost opportunities, and ongoing reputational damage. These behavioral shifts are not isolated incidents; they are extensively documented in the evidentiary record, with hundreds of examples preserved in video and audio recordings, written communications, and text messages. They

are further corroborated by third-party witness statements and testimony, leaving no doubt as to their authenticity or evidentiary weight. Taken together, this body of proof demonstrates Defendant Zloof's fraudulent intent and establishes the continuity and coordinated nature of the racketeering enterprise under RICO.

33. From January 2024 onward, Defendant Serene Zloof exploited her fabricated identity to solicit funds, induce uncompensated labor, and misappropriate intellectual property under the guise of romantic partnership and professional collaboration. Plaintiff reasonably relied on these false representations in providing funds, labor, and creative property, resulting in substantial financial loss and uncompensated professional contributions.

These inducements were part of a continuous and coordinated fraudulent scheme functioning as a racketeering enterprise. Defendant Zloof's conduct was actively facilitated and concealed by Defendant Zachary Jones, as well as Defendant Rosy Zloof. Both continuously knowingly aided, abetted, and materially assisted in advancing the fraudulent misrepresentations and by personally retaining financial and material benefits derived from the scheme.

Each of these Defendants knowingly accepted and retained benefits procured through fraudulent inducement, misrepresentation, and manipulation. Their coordinated participation demonstrates not only individual liability, but collective liability under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, for engaging in a pattern of racketeering activity through wire fraud, passport forgery, mail fraud and conversion. Collectively, Defendants conspired in and profited from this racketeering enterprise over the course of two-years, resulting in unjust enrichment at Plaintiff's expense and establishing liability for restitution, compensatory damages, treble damages under RICO, and punitive damages.

34. The following categories of losses illustrate how the fraudulent foundation of the relationship enabled systematic financial exploitation, fraudulent inducement, wire fraud, mail fraud, unjust enrichment, fraud in connection with identification documents, criminal copyright infringement, and conversion— claims further reinforced by Defendants' coordinated conduct amounting to civil conspiracy and aiding and abetting. Taken together, these acts demonstrate a pattern of racketeering activity under RICO, carried out through an enterprise

that relied on repeated fraud and deception to extract financial and professional benefits from Plaintiff.

35. Beginning in or about January 2024, Defendant Serene Zloof escalated her fraudulent inducement into a pattern of racketeering activity by converting Plaintiff's trust and emotional investment into direct financial exploitation. Operating under a fabricated identity, Defendant Zloof induced Plaintiff into substantial cash transfers, project funding, uncompensated labor, and lifestyle expenses—all under the pretense of repayment, partnership, and shared creative endeavors. These inducements were not carried out in isolation, but were reinforced and advanced with the knowing participation of Defendants Rosy Zloof and Zachary Jones, who accepted, retained, and benefitted from the proceeds of the fraudulent scheme.

Between January 2024 and March 2025, Plaintiff transferred a total of $47,348.00 in personal funds to Defendant Serene Zloof through interstate wire systems, including Wells Fargo Zelle, Apple Pay, and CashApp. These funds were represented as loans, payments for acting and writing services, and project contributions toward Defendant Zloof's television pilot, podcast projects, and related ventures, while also covering her personal living expenses, bills, and related costs. Each transfer was made in reliance on Defendant's false assurances—verbal, written, and recorded—that repayment would occur. Contemporaneous communications, financial records, and audio evidence demonstrate Defendant's express acknowledgment of both receipt and repayment obligations.

Defendant's subsequent refusal to honor these commitments, coupled with her continued exploitation of Plaintiff's creative property without assignment of rights, constitutes fraudulent inducement, conversion, wire fraud, and unjust enrichment. Because the transfers were executed through interstate electronic wire systems, they fall squarely within Wire Fraud under 18 U.S.C. § 1343, as the funds were obtained by means of false pretenses, misrepresentations, and material omissions through wire communications.

Taken together with the active involvement of Defendants Rosy Zloof and Zachary Jones, this conduct reflects a continuous and coordinated scheme amounting to a racketeering enterprise under 18 U.S.C. §§ 1961–1962, wherein Defendants conspired to obtain financial and professional benefits through

repeated acts of fraud, forgery, and deception, thereby subjecting them to
liability under RICO.

36. From January 2024 through March 2025, Plaintiff also contributed a total of
$54,344.16 in out-of-pocket direct financial funding toward Defendant Zloof's
productions and personal brand. These expenditures covered eleven separate
projects, including her television series, short films, podcast, music videos,
music tech demos, branding content, office expenses, press and marketing
campaigns, and a high-profile billboard on Sunset Boulevard advertising her
television series.

All of these payments were made under fraudulent pretenses, based on
Defendant's misrepresentation of her age and identity, falsified educational
background, repeated written and verbal promises of repayment, and assurances
of an authentic relationship, shared ownership, or mutual benefit. None of these
funds were ever reimbursed.

Plaintiff's documented contributions were not voluntary donations or gifts, but
rather loans and investments fraudulently induced by Defendant Zloof through
manipulation, deception, and false promises. Accordingly, these losses
constitutes a predicate act of Wire Fraud, Fraud in Connection with
Identification Documents under 18 U.S.C. §134, §1028, and Mail Fraud under
18 U.S.C §1341, supporting the Plaintiff's RICO claim, and also directly
support Plaintiff's claims for Conversion, Fraudulent Inducement, Copyright
Infringement, Trade Dress Infringement, and Unjust Enrichment.

Moreover, the coordinated nature of these inducements, the use of interstate
electronic transfers, and the participation of additional co-conspirators—
including Defendants Rosy Zloof and Zachary Jones, who knowingly benefitted
from and helped conceal the scheme—further demonstrates continuity of the
RICO enterprise.

37. In addition to fully financing Defendant Zloof's productions, lifestyle, and
brand, Plaintiff devoted approximately $280,050.00 worth of uncompensated
creative labor toward at least eleven separate projects and full-scale brand
management operations for Defendant Zloof. Between January 2024 and March
2025, Plaintiff shot, produced, and edited more than 13,000 high-quality
professional photographs, provided elite-level photoshoots, retouching, and

branding development, and executed a complete rebranding package including
a redesigned website, original graphics, and logo creation.

Plaintiff also created seven premium pitch decks and electronic press kits,
authored and distributed press releases, designed all visual marketing collateral,
facilitated social media campaigns and boosting, shopped sponsorship and
investment opportunities, and secured publicity opportunities that Defendant
Zloof could not have obtained independently.

Plaintiff independently created, managed and executed all substantive
deliverables, including data organization, creating custom merchandise graphics
and online shops, content transcoding, while also handling business
management, financing, and technical execution.

Plaintiff also provided full branding and project management, high-level
cinematography, production equipment, editing, VFX, audio mixing, full
production and post-production services, booking of Defendant's comedy and
music performances, execution of all production and post-production services
for music album relaunches, music videos, tech demos, social media content,
television projects, vlogs, and short films. Defendant Zloof's contributions were
negligible, and included only writing and standing in front of the camera, as
well as providing a few written biographies for EPK's—some of which were
later revealed to be false, including fabrications regarding her educational
institution degree. Plaintiff executed approximately ninety-five percent (95%)
of all creative expertise and technical labor on these projects.

This systematic exploitation of Plaintiff's uncompensated creative labor, talents,
and professional resources, obtained through false pretenses and material
misrepresentations, forms part of a coordinated racketeering scheme designed
to defraud and enrich Defendants. The conduct directly supports Plaintiff's
claims of Fraudulent Inducement (via misrepresentation of intentions and
fabricated identity to induce financing and labor), Trade Dress and Copyright
Infringement (through the wrongful use, display, and monetization of Plaintiff's
original works without license or compensation), Fraud in Identity Documents
(via the use of a forged passport and fabricated personal details to secure
reliance and access), Conversion (through the unlawful retention and misuse of
Plaintiff's creative assets, professional deliverables, and financial resources),
and Theft of Trade Secrets (through misappropriation of proprietary creative

processes, branding concepts, and project management strategies for commercial gain).

Further, Defendants Rosy Zloof and Zachary Jones were present on multiple occasions during project productions and set activities, directly benefitting from Plaintiff's professional resources. Their visible participation and enjoyment of perks funded by Plaintiff's contributions demonstrate knowing complicity and active benefit from the enterprise.

Taken together, these predicate acts demonstrate not isolated misconduct but a pattern of racketeering activity under 18 U.S.C. §§ 1961–1962, wherein Defendants Serene Zloof, Rosy Zloof, and Zachary Jones operated as an association-in-fact enterprise to obtain financial, professional, and reputational benefits through fraud, forgery, theft, and infringement, thereby subjecting them to joint and several liability for restitution, compensatory damages, and treble damages under RICO.

38. In addition, Plaintiff also secured distribution opportunities and output deals, leveraged longstanding professional connections to promote Defendant Zloof, and advanced her career through direct industry access she otherwise could not have obtained independently. The stark contrast between Defendant Zloof's work and career before meeting Plaintiff and after is dramatic in scale.

Prior to Plaintiff's involvement, Defendant Zloof's creative output was characterized by amateur-level production, limited reach, and lack of professional polish. By contrast, the projects produced under Plaintiff's direction, financing, and expertise were executed at an elite, industry-standard level—marked by cinematic quality, high-end photography and graphics, professional branding, and polished marketing campaigns rivaling top-tier entertainment productions.

This transformation is not speculative; it is evidenced by hundreds of exhibits, including videos, photographs, press releases, distribution offers, pitch decks, venue and appearance bookings, and promotional campaigns. These exhibits demonstrate the measurable elevation of Defendant's brand visibility, professional output, and public recognition—results that were only made possible by Plaintiff's exceptional talents, expertise, labor, and financial investment.

All of this extensive labor and professional expertise was rendered under false pretenses, induced by Defendant's fraudulent misrepresentations regarding her age, identity, and background, as well as repeated false promises of repayment and authentic relationship intentions. Plaintiff reasonably relied on these misrepresentations in providing substantial financial, professional, and creative resources, also under the belief that she was working with an ethical individual who would honor commitments and representations made. Defendant Zloof's conduct, instead, was deceptive and calculated to secure Plaintiff's services and resources without compensation, further demonstrating the pattern of racketeering activity alleged herein.

Defendant Zloof's refusal to honor repayment promises, her systematic misuse of Plaintiff's copyrighted intellectual property, her continued public exploitation of Plaintiff's branding, and her alteration and falsification of evidence to conceal the fraud all confirm that the relationship was not reciprocal but rather a calculated racketeering scheme executed for personal enrichment and career advancement. This conduct constitutes Fraudulent Inducement, Unjust Enrichment, Conversion, and Copyright/Trade Dress Infringement, and is directly traceable to the predicate acts of Forgery of a U.S. Passport (18 U.S.C. § 1543), Identity Fraud (18 U.S.C. § 1028), and Wire Fraud (18 U.S.C. § 1343). Together, these acts establish a pattern of racketeering activity under 18 U.S.C. §§ 1961–1962, through which Plaintiff was induced to provide nearly two years of uncompensated professional labor, substantial financial resources, and creative assets, all unlawfully diverted for Defendants' gain within the structure of an association-in-fact RICO enterprise.

39. Plaintiff's uncompensated contributions, conservatively valued at approximately $280,050, reflect a significantly discounted calculation compared to Plaintiff's established industry rates for this level of professional work. These contributions were neither gifts nor voluntary donations, but constituted sweat-equity investments made as the direct result of Defendant's manipulative scheme to exploit Plaintiff's resources for her personal and professional gain.

Taken together, Defendant Zloof's actions form an integrated pattern of misconduct designed to unlawfully extract both financial and creative value

from Plaintiff while concealing Defendant's true identity and intentions, further supporting the racketeering activity through fraud and theft predicates.

40. In addition to the $101,692.16 in documented cash transfers and direct financial contributions toward Defendant Zloof's creative projects, and the $280,050.00 in uncompensated creative labor and intellectual property provided under false pretenses, Plaintiff furnished Defendant with approximately $15,000.00 in further funds, gifts, and expenditures obtained through fraudulent inducement. These expenditures included personal items, acting classes, med-spa thermage and botox treatments, luxury spa services, cold plunges, private chef experiences, juice cleanses, gift cards, Michelin-star restaurants, flowers and desserts, groceries, DoorDash meals, electronics, office supplies, event tickets, and cash advances.

Plaintiff additionally purchased Burning Man bus tickets, stickers, and related travel for Defendant Zloof in August 2024, as well as birthday cakes, decorations, and party favors for a birthday gathering that Plaintiff was deliberately excluded from—while Defendant Zachary Jones personally enjoyed the social benefits and perks of Plaintiff's fraudulently induced contributions. Additional expenditures included comedy show and theater tickets, laundry and dry-cleaning services, personal clothing, handbags, shoes, Airbnb getaways, and hotel accommodations, all obtained through false pretenses of authentic partnership. These transactions were not incidental lifestyle costs, but formed part of the racketeering enterprise by which Defendants Zloof, Jones, and Rosy Zloof systematically diverted Plaintiff's resources for their collective enrichment, reinforcing claims of Fraudulent Inducement, Conversion, Unjust Enrichment, Wire Fraud, and Predicate Acts supporting liability under RICO.

These inducements, totaling approximately $15,000.00, were not gratuitous gifts but rather transactions fraudulently procured through Defendant Zloof's misrepresentations, including her false claims of age and identity and false relationship intentions. These transactions are corroborated by receipts, financial records, written correspondences, audio recordings, photographs, and video evidence.

Although Plaintiff initially characterized the $15,000.00 as "gifts," the surrounding context demonstrates that they were procured through fraudulent

misrepresentation, manipulation, and inducement of trust, rather than donative intent.

Accordingly, they form part of the broader scheme to defraud Plaintiff and constitute evidence of fraud in connection with identification documents, grand theft by deception, conversion of funds, fraudulent inducement, unjust enrichment, and participation in a civil conspiracy. Each of these acts reflects Defendant Zloof's intentional pattern of extracting money, property, and services under false pretenses, and they are properly included as evidence of Defendants broader pattern of racketeering activity alleged herein, even if excluded from Plaintiff's primary damages calculation.

41. Many of the gifts and expenses fraudulently induced by Defendant Zloof were not confined to her personal use but were regularly enjoyed by Defendant Zachary Jones, thereby extending the scope of the enterprise's enrichment. These included groceries, household supplies, meals, DoorDash deliveries, home office equipment, and maid services paid for directly by Plaintiff and consumed in the shared residence. Plaintiff also covered birthday expenses for Defendant Jones, including cakes and meals for his July 16, 2024 birthday, after Defendant Zloof claimed she lacked funds and pressured Plaintiff to provide items for Jones. Plaintiff purchased these items online for Defendant Zloof to present to Jones, furthering the deception and entrenching Plaintiff's financial losses.

Additionally, Plaintiff repeatedly paid for meals and drinks consumed directly by Defendant Jones during multiple social outings with Defendant Zloof, at times when Jones was aware that Defendant Zloof was misrepresenting her age and identity. Text messages, receipts, and photographs corroborate Defendant Jones's repeated enjoyment of these expenditures, demonstrating his knowing participation in the coordinated racketeering scheme.

Jones's ongoing possession and use of stolen property—including Plaintiff's television, which Defendant Zloof refused to return even after it was reported to LAPD as part of a Grand Theft Report in April 2025—further evidences his active involvement in the fraudulent enterprise. At no point did Defendant Jones contribute financially, reimburse Plaintiff, or provide Plaintiff with anything of value. Instead, he knowingly derived sustained benefit from the racketeering scheme, supporting Plaintiff's claims under RICO (18 U.S.C. §§ 1961–1968).

His conduct reinforces the predicate acts of wire fraud, fraudulent inducement, conversion, and grand theft by deception—acts actionable under California law and mirrored in federal statutes governing wire fraud (18 U.S.C. § 1343), identity document fraud (18 U.S.C. § 1028), and the interstate transportation of stolen property (18 U.S.C. § 2314).

42. Beyond the personal items, meals, and household goods previously described, Defendant Zachary Jones also benefitted from Plaintiff's payments of rent, utilities, bills, and other essential living expenses that were fraudulently induced by Defendant Zloof. These were not discretionary extras but core housing and subsistence costs, which Zloof misrepresented as necessary for their shared residence.

By virtue of residing in the household, Defendant Jones directly consumed and enjoyed the benefits funded through Plaintiff's fraudulently induced transfers—including housing, utilities, meals, entertainment, and travel—without ever contributing financially or providing repayment of any kind. Defendant Zloof herself admitted in multiple communications that Jones knew her true age and background during the period when she was actively misrepresenting both to Plaintiff, confirming that Jones had actual knowledge of the deception from inception and nevertheless chose to support, conceal, and facilitate it.

Accordingly, Jones's receipt of household expense coverage constitutes direct Unjust Enrichment, while his knowing participation and sustained enjoyment of the benefits render him liable for Aiding and Abetting, Fraudulent Inducement, and Civil Conspiracy. More critically, this conduct forms part of the pattern of racketeering activity under RICO (18 U.S.C. §§ 1961–1968), as Jones knowingly joined in an enterprise that engaged in predicate acts including Wire Fraud and Fraud in Identification Documents. His participation in, and benefit from, the scheme establishes him not as a passive bystander, but as an active and culpable member of the racketeering enterprise.

43. Having actual knowledge that Defendant Zloof used a digitally forged U.S. passport to misrepresent her identity and age to Plaintiff, Defendant Jones nevertheless deliberately continued to live off Plaintiff's fraudulently induced funds while concealing this fact. Defendant Jones was fully aware of the fraud being perpetrated against Plaintiff and made no effort to stop or disclose it.

Instead, he knowingly reaped the financial and material benefits derived from Zloof's deception.

By knowingly benefiting from expenditures procured through the use of a forged identification document—a predicate act under 18 U.S.C. § 1961(1)—Jones aided and abetted the fraudulent scheme and became complicit in the anchor fraud from which all subsequent acts of financial exploitation flowed. His deliberate silence and continued participation also constitute Civil Conspiracy, as he combined and agreed with Defendant Zloof to defraud Plaintiff, perpetuate the deception, and maintain the racketeering enterprise.

Jones's refusal to disclose the truth, despite actual knowledge of Zloof's use of a forged U.S. passport, underscores his role as a knowing participant in a coordinated enterprise of fraud, identity deception, and racketeering activity. By retaining and consuming funds and property procured under false pretenses, Jones is also liable for Conversion, having wrongfully exercised dominion over Plaintiff's assets for his own use and benefit.

Taken together, Defendant Jones's conduct demonstrates calculated complicity and knowing participation in a racketeering scheme involving predicate acts of Forgery, Wire Fraud, and Fraudulent Inducement, all of which were designed to exploit Plaintiff financially and personally for the Defendants' unlawful career advancement and enrichment.

44. In addition to Defendant Jones's unjust enrichment, Defendant Rosy Zloof was also a knowing participant and direct beneficiary of the fraudulent scheme. At Defendant Serene Zloof's direction, Plaintiff was induced to provide airline tickets for Rosy Zloof to travel to Los Angeles, ground transportation, and a separate Southwest Airlines gift card. Plaintiff also purchased tickets to entertainment events that Rosy Zloof attended, corroborated by photographic evidence.

Defendant Serene Zloof further induced Plaintiff to cover expenses on behalf of her mother, including alleged pawn-shop jewelry retrieval, cash for a Las Vegas trip, and repayment of a med-spa treatment Defendant Zloof had secretly charged to her mother's credit card without consent. Written communications confirm that Defendant Zloof repeatedly used Plaintiff's funds to take her mother out to meals and provide her with additional cash, underscoring that

these disbursements were made under fraudulent inducement. These transactions are documented by text messages, receipts, financial transfers, photographs, and video evidence. Defendant Zloof herself admitted in writing that her mother was "her Achilles heel," an acknowledgment that she manipulated Plaintiff's funds to maintain control of Defendant Rosy Zloof's approval and favor.

Crucially, when Plaintiff later contacted Defendant Rosy Zloof directly with proof of the digitally forged U.S. passport—the anchor fraud that initiated the scheme—Defendant Rosy Zloof deliberately ignored this evidence and refused to act or respond, despite clear notice of ongoing deception and financial exploitation. By continuing to accept the material benefits funded through fraud, while willfully concealing evidence of theft and passport forgery, Defendant Rosy Zloof knowingly assisted in the escalation of the racketeering enterprise's activity.

Her conduct constitutes knowing participation and active concealment of a predicate act (passport forgery under 18 U.S.C. § 1543), and agreement with her daughter to perpetuate the scheme. By virtue of these actions, Defendant Rosy Zloof is liable not only for Unjust Enrichment but also for Civil Conspiracy, Aiding and Abetting, Fraud in Connection with Identification Documents, and participation in a RICO-qualifying enterprise in violation of 18 U.S.C. § 1962(c).

Defendant Rosy Zloof is likewise liable for Receipt of Stolen Property and Wire Fraud. After Plaintiff transmitted to her the digitally forged U.S. passport used by Defendant Serene Zloof to misrepresent her identity and age, Defendant Rosy Zloof deliberately ignored this incontrovertible proof of forgery and continued to benefit from Plaintiff's fraudulently induced expenditures.

45. Plaintiff further submits that prior to uncovering the age fraud, Defendant Rosy Zloof texted Plaintiff: "how do we monetize what Serene is doing in her career, because she has gone without for so long." At the time, Plaintiff reasonably perceived this as benign encouragement. However, Defendant Zloof later admitted in writing that her mother had known all along about the false age representations and the forged passport, establishing that Defendant Rosy Zloof's communication was part of a larger scheme to exploit Plaintiff financially and professionally further demonstrating her active key role in

contributing to the RICO enterprise. This is directly supported by corroborating video, audio, text messages, and written correspondence in Plaintiff's possession.

46. Defendant Zloof's conduct demonstrates a sustained pattern of racketeering activity. Even purported "gifts" were extracted through fraudulent identity misrepresentation and false relationship pretenses, thereby converting every expenditure into an act of fraud. Over the course of nearly two years, Plaintiff exclusively funded the relationship—covering meals, travel, lodging, creative projects, and daily living expenses—while Defendant Zloof contributed less than $500 in total.

The rare occasions on which Defendant advanced costs were limited to two Lyft rides, one night of drinks, and a single hotel stay—paid only because Plaintiff had temporarily misplaced their wallet. Even then, Defendant Zloof demanded immediate reimbursement for all but approximately $50, which Plaintiff repaid in full. Beyond these isolated exceptions, Defendant never provided financial support, instead establishing a consistent pattern of unilateral extraction, refusal to contribute, and calculated financial dependence.

This systematic course of conduct reflects not mere opportunism but Fraudulent Inducement, Grand Theft by Deception, and participation in a racketeering enterprise under 18 U.S.C. § 1962(c). Defendant's misrepresentations and coercive pattern of non-contribution transformed the relationship into a fraudulent scheme designed to enrich herself at Plaintiff's sole expense, consistent with the hallmarks of wire fraud, unjust enrichment, and financial exploitation forming part of a broader RICO-qualifying enterprise.

47. In November 2024, Plaintiff even had to personally fund their own birthday outing with Defendant Zloof in downtown Los Angeles, paying for all meals, drinks, and lodging while Defendant contributed nothing. At no point during the relationship did Defendant Zloof ever reciprocate by covering even a single meal, special occasion, or expense for Plaintiff. This deliberate non-reciprocity underscores that the relationship was never genuine, but instead a calculated façade designed by Defendant Zloof for personal enrichment and professional advancement.

Such conduct is not merely exploitative but emblematic of a pattern of racketeering activity. By fraudulently inducing Plaintiff to finance every aspect of her lifestyle and career under false identity and relationship pretenses, Defendant Zloof engaged in acts consistent with Fraudulent Inducement, Grand Theft by Deception, Conversion, Unjust Enrichment, and Copyright Infringement—predicate offenses supporting liability under 18 U.S.C. § 1962(c). The continuity and relatedness of these acts establish participation in an ongoing racketeering enterprise, with each transaction reinforcing the overarching scheme of deception and financial exploitation.

These claims are substantiated by extensive corroborating evidence, including hundreds of video and audio recordings, contemporaneous written communications, financial records, and supporting documentation, all of which collectively demonstrate the deliberate, systematic nature of Defendant Zloof's racketeering scheme.

48. Under both California and federal law, fraud vitiates consent and nullifies the legal effect of any agreement, transfer, or purported "gift" obtained through deception. Fraud not only creates an independent cause of action, but also retroactively invalidates all supposed agreements or voluntary contributions made under false pretenses. In the present matter, Plaintiff's financial transfers, uncompensated labor, creative services, and personal contributions were not "gifts" or voluntary undertakings, but were instead induced through Defendant Zloof's fraudulent concealment of her true age, reliance on a forged United States Passport, and false portrayal of her relationship intentions.

But for this deception, Plaintiff would not have entered into any mentorship, intimate relationship, financial support arrangement, or professional collaboration with Defendant. Accordingly, any funds or property characterized by Defendant as "gifts" are legally invalid where obtained through fraudulent inducement; any oral or implied contracts entered into under misrepresentation are voidable, as consent was never informed or genuine; and emotional, financial, and professional contributions premised upon Defendant's false identity and forged documents cannot be construed as consensual or binding.

Therefore, Plaintiff is entitled to restitution, damages, and full legal remedies. Defendant cannot rely on the defense of "gifting," nor can she shield herself with the existence of any purported relationship or informal contract, because

fraud infects and negates all such agreements. As courts have consistently held, fraud renders any agreement voidable ab initio, and a party who secures funds or services by misrepresentation cannot later shield themselves behind the guise of consent or gifting.

This fraudulent conduct, taken together with the systematic misappropriation of Plaintiff's assets, identity deception, and concealment of material facts, forms part of a broader racketeering enterprise under 18 U.S.C. §1962. Defendant's use of forged government identification, fraudulent inducement, financial theft, and concealment of proceeds are predicate acts within a sustained pattern of racketeering activity, designed to defraud, exploit, and unjustly enrich at Plaintiff's expense.

49. From August 2023 through March 2025, Plaintiff personally shot, funded, and edited over 13,000 photographs of Defendant Zloof. These photoshoots included both professional sessions and private, intimate sittings, all undertaken solely by Plaintiff, a highly skilled photographer with over twenty years of professional experience. At no time was Defendant Zloof ever legally granted, assigned, or licensed any rights to these photographs in writing. Plaintiff received no compensation for these sessions, and all creative labor, equipment, and expenses were borne exclusively by Plaintiff.

Plaintiff temporarily verbally permitted Defendant Zloof limited use of the images during the relationship based solely on the belief that Defendant Zloof was the age, identity and background she represented. Only after uncovering Defendant's fraud, forged documents, and deceptive relationship inducements did Plaintiff revoke permission and demand that Defendant immediately cease all use of the photographs in public forums.

All of these photoshoots were induced under fraudulent pretenses. Defendant Zloof deliberately concealed her true age and identity, misrepresented her educational background and relationship intentions, and induced Plaintiff into providing professional services of substantial value without lawful compensation. The fair market value of Plaintiff's professional photography and retouching services is approximately $35,500, representing another component of Defendant Zloof's Fraudulent Inducement, Grand Theft by Deception, and Conversion. Defendant never offered payment to legally license the content and

instead exploited the works for personal enrichment and career advancement despite repeated demands.

This conduct was not incidental but part of a broader racketeering scheme. Defendant Zloof engaged in a sustained pattern of fraudulent inducement, identity misrepresentation, and forgery, including use of a digitally altered passport in violation of 18 U.S.C. § 1543 (forgery or false use of passports), repeated acts of wire fraud under 18 U.S.C. § 1343 by transmitting fraudulent communications and stolen content electronically, and multiple acts of fraud and theft under California state law. Defendant's exploitation of Plaintiff's uncompensated labor, intellectual property, and financial resources demonstrates a coordinated racketeering enterprise designed to defraud, extract value, and enrich herself unlawfully, thereby satisfying the predicate acts required under RICO.

50. Following a formal cease-and-desist and legal demand for Defendant Zloof to immediately remove Plaintiff's creative work from her online platforms, Defendant Zloof willfully ignored these demands and continued to use the photographs without authorization. Defendant's ongoing infringement led to eight of her social media accounts being fully terminated for repeat infringement and required Plaintiff to file more than 160 legal DMCA takedown notices. Despite repeated notices, Defendant Zloof continues to unlawfully display and distribute Plaintiff's copyrighted photographs and graphic design assets on her two remaining social media accounts.

Accordingly, Defendant Zloof's conduct constitutes Fraudulent Inducement, in that Plaintiff was induced to provide photography services under false pretenses; Grand Theft by Deception, in that Defendant wrongfully obtained professional services valued at $35,500 without payment; Copyright Infringement, in that Defendant has continued to use Plaintiff's works without authorization and in defiance of repeated notices; Trade Dress Infringement, in that Defendant misappropriated and cloned Plaintiff's unique graphic design assets, branded materials, and promotional layouts in a manner likely to cause consumer confusion and dilute Plaintiff's professional identity; and Conversion, in that Defendant has exercised wrongful dominion and control over Plaintiff's intellectual property in direct violation of Plaintiff's exclusive rights.

Plaintiff remains the sole and exclusive copyright holder of all 13,000-plus works—spanning professional photographs, personal portraits, private sessions, and original design assets—and Defendant has no lawful ownership, license, or claim to any of them.

51. In September 2024, Defendant Zloof fraudulently induced Plaintiff into forming a limited liability company ("LLC") under false pretenses. Defendant misrepresented the entity as a legitimate vehicle for joint business and creative ventures when, in reality, it was conceived solely as an instrument to advance her ongoing scheme of deception, exploitation, and theft.

The LLC functioned for less than seven months, ceasing all activity by March 2025, and generated nothing beyond three podcast episodes—each itself a product of fraud and misappropriation. Every major creative work—including photoshoots, television pilots, short films, technology demos, billboard campaigns, graphics, music videos, marketing materials, rebranding assets, and professional services—was developed entirely outside the LLC's scope, much of it predating its formation, and none of it was ever lawfully assigned, licensed, or transferred to the LLC.

Plaintiff alone funded all filing fees, administrative expenses, and maintenance costs, while Defendant contributed nothing financially. Defendant's sole purpose in orchestrating the entity's creation was to fabricate the appearance of a joint partnership, thereby misappropriating Plaintiff's funds, labor, and intellectual property under a false veneer of legitimacy.

Such conduct constitutes a sham corporate vehicle and further evidence of Defendant's Fraudulent Inducement, Conversion, Unjust Enrichment, Theft of Trade Secrets, and Grand Theft by Deception. It also exemplifies a pattern of racketeering activity, wherein Defendant used the LLC as an artifice to further an ongoing fraudulent enterprise. The continuity and relatedness of these acts—fraudulent inducement, misappropriation of funds, exploitation of intellectual property, and concealment of true intent—establish that the LLC was not a bona fide business, but rather a racketeering instrumentality designed to disguise unlawful conduct.

Accordingly, the LLC cannot serve as a corporate shield for Defendant's misconduct. Its misuse directly caused significant financial losses to Plaintiff

and further substantiates the need to pierce any asserted corporate protections. The entity's brief, fraudulent existence demonstrates its function as a sham vehicle conceived for the sole purpose of facilitating fraud within the broader racketeering enterprise.

52. In or around April 2025, after uncovering the full scope of Defendant Zloof's fraudulent racketeering scheme—including false age and identity representations, fabricated educational history, and misrepresented relationship intentions—Plaintiff immediately terminated all association with her, canceling booked comedy and music performances and withdrawing pending press opportunities.

53. Following this discovery, Plaintiff extended a good-faith settlement proposal, offering Defendant Zloof a heavily discounted repayment plan for fraudulently induced funds, a lawful license to continue using Plaintiff's creative works, and the opportunity for an amicable private resolution. Defendant Zloof flatly rejected this reasonable offer. Instead, she attempted to impose a coercive and illusory barter arrangement in which she would continue exploiting Plaintiff's intellectual property without compensation—despite having obtained it through fraud, forgery of identity, and misrepresentation—and proposed a nominal "day rate" in exchange for rights to a short film fully funded, shot, produced, and edited by Plaintiff for thousands of dollars at her sole expense. Defendant Zloof even went so far as to claim she would "allow" Plaintiff to use their own photographs, which Plaintiff had personally funded, shot, and edited.

This sham "settlement" was nothing more than an extension of the fraudulent scheme, designed to perpetuate Defendant's unlawful exploitation of Plaintiff's work while evading accountability. Plaintiff rightfully rejected the proposal and demanded repayment, return of stolen property, and cessation of unlawful use absent proper licensing. Defendant Zloof refused, retaining personal and production property belonging to Plaintiff—including a television, electronics, and production costuming—while continuing to exploit photographs, graphics, videos, and other intellectual property in direct violation of Plaintiff's exclusive rights and repeated cease-and-desist demands.

54. Defendant Zloof's conduct was not an isolated misunderstanding, but a calculated continuation of the fraudulent scheme, furthering her unlawful enrichment and career advancement at Plaintiff's expense. Importantly,

Defendant Rosy Zloof and Zachary Jones were fully aware of this ongoing scheme, yet took no steps to intervene, remedy the fraud, or repay misappropriated funds and property. Their silence and inaction in the face of obvious exploitation constitute knowing participation and tacit approval, further reinforcing the existence of a coordinated racketeering enterprise involving multiple actors.

This pattern of conduct—fraudulent inducement, attempted coercive settlement, continued misappropriation, and refusal to return stolen property—demonstrates continuity, relatedness, and deliberate enterprise coordination. It substantiates claims for Fraudulent Inducement, Grand Theft by Deception, Conversion, Unjust Enrichment, Copyright/Trade Dress Infringement, and Civil RICO liability.

55. In April 2025, Defendant Zloof also refused to return $2,850.00 in post-production funds for a separate feature film project that had been advanced to her, despite receiving a formal termination letter and repeated demands for repayment. Defendant Zloof induced Plaintiff to advance the funds by insisting that she faced urgent financial need for rent, and that she would perform post-production services. In truth, Defendant never performed or completed the work.

This conduct constitutes wire fraud (18 U.S.C. §§ 1341), fraud in connection with identification and financial misrepresentations (18 U.S.C. § 1028), and conversion. Defendant's intentional misrepresentations and subsequent appropriation of Plaintiff's fraudulently induced funds also further a broader pattern of racketeering activity. The funds were diverted for personal benefit and for the benefit of her co-Defendant Zachary Jones, thereby evidencing a conspiracy to unlawfully enrich both parties.

Accordingly, this scheme forms part of the consistent pattern of racketeering activity under 18 U.S.C. § 1961, including predicate acts of wire fraud, and financial fraud, and supports liability for civil RICO under 18 U.S.C. § 1962(c) and (d).

56. Evidenced by extensive video, audio, and written documentation, Defendant Zachary Jones functioned as an active participant in Defendant Serene Zloof's racketeering scheme. Rather than acting independently, Defendant Jones

repeatedly reinforced and legitimized Zloof's false identities, manipulative self-portrayals, and exploitative conduct—positioning himself as an extension of her fraudulent enterprise.

In recorded creative content, Defendant Jones explicitly referred to Defendant Zloof in derogatory, sexualized terms, normalizing her destructive persona-masks and feeding directly into her weaponized identity scripts. Defendant Zloof adopted and operationalized these labels as tools to manipulate perception, obscure accountability, and advance her scheme of exploitation and enrichment. Defendant Jones' reinforcement of these scripts transformed them into coordinated devices of deception, not isolated remarks.

This coordination extended beyond language. Defendant Zloof misrepresented her age and produced a forged United States passport to maintain her false identity. When confronted, she repeatedly instructed others to "ask Zapper"—relying on Defendant Jones as her corroborating witness.

By endorsing and validating Defendant Zloof's fabricated identities, Jones knowingly Aided and Abetted fraudulent inducement, identity fraud, and grand theft by deception. His conduct demonstrates a sustained pattern of enabling, amplifying, and legitimizing Zloof's fraudulent practices, rendering him a key co-participant in an ongoing scheme.

Taken together, these facts establish that Defendant Jones' actions were not incidental or peripheral; they formed part of the pattern of racketeering activity necessary to sustain Defendant Zloof's enterprise. This conduct supports claims for Aiding and Abetting, Fraudulent Inducement, Grand Theft by Deception, Unjust Enrichment, and liability under the Racketeer Influenced and Corrupt Organizations Act (RICO).

57. Defendant Serene Zloof consistently employed rapidly shifting personas and identities, presenting a different version of herself from day to day, rarely showing a consistent or authentic self. Defendant deliberately mirrored Plaintiff's expectations and performed whichever role she believed would secure Plaintiff's trust, mentorship, and financial support. This pattern of masking and role-playing—effectively "performing" identities rather than authentically presenting herself—was an integral part of her fraudulent scheme. Defendant Zloof admitted on video that she "performs for people," implying

that these personas were consciously constructed to deceive and manipulate according to her agenda.

This performative deception directly supported Defendant Zloof's fraudulent inducement: she misrepresented her age, background, relied on a forged United States passport, and constructed false identities to create the illusion of compatibility, vulnerability, and need for mentorship. These tactics induced Plaintiff into providing substantial financial transfers, uncompensated labor, intellectual property, and professional opportunities that they otherwise would not have provided.

The fraudulent nature of these shifting personas is corroborated by hundreds of personal videos documenting Defendant Zloof's behavior throughout the relationship, third-party witness testimony, written corroboration, and audio recordings. Defendant Zloof's own admissions, combined with this extensive evidentiary record, demonstrate that her identity performance was not incidental but central to her fraudulent inducement and forms part of the pattern of racketeering activity alleged herein.

58. In May 2025, after Plaintiff severed ties with Defendant Zloof and refused multiple coercive "settlement" proposals, Defendant Zloof escalated her racketeering activity through acts of retaliatory theft and obstruction. Specifically, she willfully refused to return Plaintiff's personal and professional property despite police involvement and repeated demands, instead knowingly retaining production equipment, costumes, and Plaintiff's personal belongings. These refusals, undertaken after notice and despite law enforcement direction, demonstrate intentional conversion and obstruction consistent with the enterprise's broader fraudulent scheme.

Defendant Zloof then compounded the misconduct by falsely claiming to have returned all items, despite incontrovertible proof by video, text messages, and photographs establishing that she had not. Plaintiff was compelled to file a grand theft report documenting the stolen property. The very next day, after being served with the Police Report, Defendant Zloof absconded overseas to Japan with Defendant Rosy Zloof while in possession of the stolen property, where she openly mocked Plaintiff and law enforcement by publishing social media videos flaunting and wearing the stolen items publicly.

These acts are not isolated but are integral to Defendant Zloof's ongoing
racketeering activity: a coordinated cover-up designed to obstruct justice,
conceal her underlying Fraud, Forgery, Grand Theft, Trade Dress Infringement,
and Copyright Infringement, and retaliate against Plaintiff for refusing to
capitulate to her coercive demands. Each retaliatory act—refusal to return
property, false representations of compliance, flight overseas with stolen goods
after receiving an LAPD Grand Theft police report, and public taunting—
constitutes evidence of obstruction, consciousness of guilt, and continuation of
the fraudulent scheme. These actions fall squarely within the pattern of
racketeering conduct alleged herein and are probative of the enterprise's
existence, continuity, and unlawful purpose.

Defendant Rosy Zloof is also visible in many of these social media videos and
photographs alongside Defendant Serene Zloof in Japan. In these materials,
Defendant Serene Zloof is wearing stolen costumes and wardrobe items that
had been transported overseas after a grand theft police report was filed.
Defendant Rosy Zloof's presence in these videos and photos establishes her full
awareness of the situation and the unlawful possession of stolen property.

59. Plaintiff further alleges that she attempted to reach out to Defendant Zloof's
brother, Joshua Zloof, in or around May 2025 after discovering the forged
United States passport that Defendant had been using to further her fraudulent
inducement scheme and refusing to return all of Plaintiff's belongings. Plaintiff
transmitted to Joshua Zloof a text message containing an image of the forged
passport, making him fully aware of both the fraudulent document and the
seriousness of Defendant Zloof's conduct. Despite receipt of this
incontrovertible evidence, Joshua Zloof willfully ignored the forgery, failed to
acknowledge its criminal significance, and continued engaging with Plaintiff as
though no such fraud had occurred.

While Joshua Zloof is not named as a direct defendant in this civil action, his
refusal to acknowledge, intervene, or repudiate the conduct demonstrates that
no member of Defendant Zloof's family was willing to address or take
responsibility for the fraudulent enterprise. This omission, in the context of his
knowledge, materially aided the concealment of the scheme and evidences the
broader pattern of racketeering activity, including Conspiracy, Aiding and
Abetting, and Obstruction. These actions—and inactions—further support

Plaintiff's claims of Fraudulent Inducement, Grand Theft, Receipt of Stolen Property, Unjust Enrichment, Civil Conspiracy, and Interference with Contractual and Professional Relationships, and are part of the continuous racketeering scheme described herein.

60. In May 2025, after uncovering additional details regarding the full scope of Defendant Zloof's fraudulent scheme—and after her refusal to repay Plaintiff or make any effort to remedy the situation—Defendant Zloof instead escalated her conduct, doubling down with threats and engaging in retaliatory acts against Plaintiff. Such conduct, when coupled with the prior fraud, forgery, and financial exploitation, evidences a continuing pattern of racketeering activity designed to intimidate, silence, and further harm Plaintiff.

As a result, Plaintiff reported Defendant Zloof's passport forgery and related fraud to law enforcement, triggering formal criminal investigations. A second police report was filed with Riverside County, as substantial portions of Defendant Zloof's fraudulent scheme occurred while Plaintiff was residing in Idyllwild. Riverside authorities commenced a parallel inquiry into her criminal activity.

By July 2025, the Los Angeles Police Department had completed its investigation and referred the matter to the Los Angeles County District Attorney's Office with a formal warrant request. The pending prosecutorial review underscores not merely isolated misconduct but a coordinated and deliberate racketeering enterprise involving fraudulent inducement, wire fraud, forgery, theft, and retaliatory intimidation—acts squarely fitting within the framework of the Racketeer Influenced and Corrupt Organizations Act (RICO).

61. Over the following months, Defendant Serene Zloof and Defendant Zachary Jones continued to appear in photographs and social media videos flaunting and exploiting the stolen property—including wardrobe, costumes, and creative assets—for promotional and commercial purposes, such as advertising a film festival premiere and at music festivals.

These appearances were not isolated incidents but part of a continuing pattern of racketeering activity involving theft, concealment, and interstate transportation of stolen goods. A third-party production company was forced to settle directly with Plaintiff in order to avoid liability after Defendant Zloof

attempted to monetize Plaintiff's stolen property, demonstrating that the exploitation was deliberate, calculated, and commercially motivated.

Collectively, these acts constitute predicate racketeering activity—wire fraud, mail fraud, theft, obstruction of justice, and receipt of stolen property—undertaken as part of a coordinated scheme to defraud, obstruct Plaintiff's recovery, and unjustly enrich Defendants Zloof and Jones. Defendant Zloof has to this day refused to return the stolen assets, maintaining unlawful possession in open defiance of Plaintiff's demands and in continuing violation of federal law. These actions are not incidental wrongs but clear indicia of an ongoing criminal enterprise falling squarely within the ambit of the Racketeer Influenced and Corrupt Organizations Act (RICO).

62. In May and June of 2025, Defendant Serene Zloof escalated her unlawful conduct into a sustained campaign of retaliation against Plaintiff, publishing and distributing Plaintiff's protected video and media content without authorization. These works—including high-level photoshoots, audiovisual productions, and branded promotional graphics—were exclusively conceived, funded, and executed by Plaintiff. Defendant Zloof had no authorship, assignment, or legal entitlement to any portion of the content. Her systematic misappropriation was not incidental, but part of a broader racketeering scheme designed to defraud, retaliate, and unjustly enrich, squarely fitting within the framework of the Racketeer Influenced and Corrupt Organizations Act (RICO). During this same period, Defendant Zloof appeared at a red-carpet film premiere with Defendants Rosy Zloof and Zachary Jones, simultaneously flaunting Plaintiff's misappropriated assets online while orchestrating her retaliatory campaign—further evidencing her ongoing use of Plaintiff's property in an organized racketeering enterprise.

63. Further, Defendant Zloof misappropriated Plaintiff's original branding and design assets by cloning and reposting graphics across multiple social media platforms. Such conduct not only constitutes Copyright Infringement, but also Trade Dress Infringement and False Designation of Origin, passing it off as it her own creation and creating consumer confusion by falsely suggesting an affiliation between Defendant and Plaintiff's professional brand.

64. At the time of publication, Defendant Zloof had already been served with a cease-and-desist notice, settlement offer, and licensing opportunity, all of which

she rejected in bad faith. Instead, she continued her unlawful conduct in open defiance of legal directives. Plaintiff's evidence—spanning Defendant's social media accounts, DMCA counter-notices filed by Defendant, raw metadata, copyright registration records, written admissions by Defendant acknowledging unlawful use, and third-party witness testimony—establishes a clear chain of fraudulent inducement, theft, and infringement. Collectively, these acts demonstrate a pattern of racketeering activity encompassing Fraudulent Inducement, Grand Theft by Deception, Trade Dress and Copyright Infringement, and retaliatory intimidation.

Defendant's actions were carried out with calculated retaliatory intent following Plaintiff's discovery of her deception and the severing of ties. Having fraudulently induced Plaintiff to create the works in the first instance, Defendant then attempted to continue exploiting Plaintiff's content without compensation, treating the property as if she had a perpetual, unlawful right to use it. This conduct—persistent, retaliatory, and profit-driven—demonstrates not a personal dispute but an organized scheme of fraud and racketeering under RICO.

65. In late May 2025, Defendant Zloof escalated her unlawful scheme by publishing on her personal website Plaintiff's confidential press kits, electronic press kits (EPKs), and other proprietary creative and operational materials on her website. These documents contained Plaintiff's highly sensitive brand construction elements, unreleased creative assets, and behind-the-scenes production frameworks that were expressly intended to remain confidential. By exposing these materials without authorization, Defendant unlawfully disclosed Plaintiff's trade secrets, revealing core brand identity and creative processes, thereby causing professional harm, loss of exclusivity, and competitive disadvantage.

This conduct constitutes misappropriation and disclosure of trade secrets in violation of the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836 et seq.) and the California Uniform Trade Secrets Act (Cal. Civ. Code §§ 3426–3426.11). It further supports Plaintiff's claims for Fraudulent Inducement, Unjust Enrichment, Trade Dress Infringement, Copyright Infringement, and Intentional Interference with Prospective Economic Advantage. Defendant's unauthorized publication of Plaintiff's unreleased and proprietary materials

demonstrates willful intent to damage Plaintiff's professional standing, diminish business opportunities, and unlawfully gain leverage through exposure of confidential intellectual property.

These acts were not isolated missteps but part of a coordinated pattern of racketeering activity within the meaning of the Racketeer Influenced and Corrupt Organizations Act (RICO). Defendant's systematic misuse of trade secrets, coupled with her broader campaign of fraud, theft, and retaliation, evidences an organized enterprise designed to secure unlawful financial gain and to retaliate against Plaintiff's lawful enforcement efforts.

66. In May 2025, Defendant Serene Zloof's retaliatory conduct extended well beyond her initial fraud, theft, and forgery, evolving into a calculated smear campaign designed to conceal her prior fraudulent actions, discredit Plaintiff, obstruct accountability, and preserve the unlawful benefits of her ongoing racketeering scheme. After Plaintiff began exposing Defendant Zloof's misconduct, she fabricated baseless allegations that Plaintiff and her business partner had committed "charity fraud," inducing a third-party charity representative to draft a defamatory letter under false pretenses. These knowingly false statements, though not pursued here as an independent defamation claim, are pleaded as factual evidence of wire fraud and obstruction of justice within the meaning of 18 U.S.C. §1961(1). They demonstrate Defendant's ongoing racketeering activity and pattern of retaliatory cover-up, which forms part of the RICO enterprise alleged herein."

This false claim was immediately disproven by Plaintiff's financial records, receipts, written documentation, third-party witness statements, contemporaneous audiovisual evidence, and two-hours of documentary video showing Plaintiff's good-faith contributions to assist a child with substantial personal funding at Defendant Zloof's own urging. The allegation was fully retracted by the individual and organization involved, with a written retraction and apology confirming no charity fraud had ever occurred.

The letter was procured by Defendant Zloof through knowingly false and defamatory statements, deliberately conveyed to a third-party representative in furtherance of her fraudulent enterprise. These communications were not incidental—they were calculated acts intended to obstruct discovery of her racketeering scheme, retaliate against Plaintiff for lawfully exposing her

misconduct, and shield her ongoing exploitation of Plaintiff's intellectual property and resources. Defendant Zloof knew her statements were categorically false, as contemporaneous video evidence directly contradicts and disproves her claims. This conduct constitutes not only defamation, but also obstruction, witness tampering, and wire fraud predicate acts within the meaning of the Racketeer Influenced and Corrupt Organizations Act (RICO).

These knowingly false statements, though not pursued here as an independent defamation claim, are pleaded as factual evidence of wire fraud and obstruction of justice within the meaning of 18 U.S.C. §1961(1). They demonstrate Defendant's ongoing racketeering activity and pattern of retaliatory cover-up, which forms part of the RICO enterprise alleged herein.

These malicious falsehoods were then further repeated and spread by Defendant Zloof's attorney without due diligence, compounding the defamatory effect and forcing Plaintiff into additional litigation to defend her reputation.

Moreover, Defendant Zachary Jones publicly supported Defendant Zloof's knowingly false "charity fraud" allegation, standing beside her in promoting a baseless knowingly false claim that was quickly retracted. By endorsing Defendant Zloof's false narrative, Defendant Jones lent credibility to Zloof's retaliatory smear campaign, furthering the racketeering scheme and actively participating in the continuation of fraudulent and defamatory conduct.

67. Defendant Zloof's fraudulent conduct extended beyond her direct dealings with Plaintiff and actively disrupted Plaintiff's professional contracts, industry relationships, and livelihood. Defendant Zloof repeatedly engaged in defamatory smearing, copyright infringement, theft of intellectual property, grand theft of physical production items, and fraudulent inducement of funds— all of which undermined Plaintiff's ability to perform professional obligations and maintain business relationships.

In June 2025, Defendant Zloof deliberately fabricated and transmitted fraudulent screenshots to a third-party producer, falsely purporting that her Twitter/X account was locked. This misrepresentation was a calculated attempt to obstruct enforcement efforts and avoid removal of Plaintiff's copyrighted and trade dress–protected content. Subsequent investigation confirmed the

screenshot originated from a random Google image, not from Defendant
Zloof's actual account, and the deception was reported to law enforcement.

This intentional fraud caused direct interference with Plaintiff's active film
marketing contract, resulting in a breach and inability to continue performing
tasks under that contract. Defendant Zloof not only deprived Plaintiff of funds
but also inflicted reputational damage, eroding professional credibility,
disrupting ongoing negotiations, and contributing to further contract
breakdowns.

Defendant Zloof's actions constitute intentional interference with prospective
economic advantage and fraudulent inducement, supporting Plaintiff's claims
for damages and injunctive relief. Her willingness to deceive third-party
producers to further her scheme illustrates an ongoing racketeering enterprise
designed to perpetuate theft, retaliation, and fraudulent cover-ups. Defendant
Zloof's conduct demonstrates a sustained pattern of fraudulent
misrepresentation and retaliatory obstruction that continues to cause lasting
damage to Plaintiff's career, professional reputation, and industry standing.

68. By mid-June 2025, Defendant Zloof's harassment escalated dramatically,
constituting not only personal misconduct but also predicate racketeering
activity within the meaning of 18 U.S.C. §1961. This included public taunting,
false claims of ownership over Plaintiff's content and property, and the
continued unauthorized posting of Plaintiff's copyrighted works. Defendant
Zloof further leveraged fabricated narratives and sham communications to third
parties, designed to obstruct Plaintiff's enforcement efforts, silence Plaintiff
through intimidation, and perpetuate the unlawful exploitation of Plaintiff's
intellectual property. The severity of this misconduct compelled Plaintiff to seek
judicial intervention, including a domestic violence restraining order.

As a direct result of this pattern of racketeering conduct, Plaintiff was rendered
unable to work for an extended period of time, supporting Plaintiff's claims for
Intentional Interference with Prospective Economic Advantage as well as
demonstrating continuity of the racketeering scheme. Defendant Zloof's actions
were willful, malicious, and retaliatory, intended to punish Plaintiff for severing
ties, reporting her to authorities, and pursuing enforcement of intellectual
property rights.

Plaintiff's allegations are supported by restraining order filings, multiple third-party witness statements, police correspondence, mental health records, and extensive video and audio evidence. Collectively, these materials corroborate both the severity of Defendant Zloof's actions and the extreme financial harm inflicted upon Plaintiff.

This conduct constitutes predicate acts under RICO, including Wire Fraud, Obstruction of Justice, and Witness Retaliation, and forms part of Defendant Zloof's ongoing racketeering enterprise. Together with forgery, fraud in connection with identification documents, theft of trade secrets, copyright infringement, and destruction/falsification of records, Defendant Zloof's misconduct demonstrates a continuous pattern of unlawful activity designed to secure illicit financial gain, obstruct justice, and destroy Plaintiff's professional livelihood.

69. From June 2025 onward, Defendant Zloof engaged in an ongoing racketeering pattern of retaliation, harassment, theft, and defamation, all designed to further her fraudulent enterprise. She misappropriated Plaintiff's intellectual property, creative works, trade dress, graphics, and content, while simultaneously disseminating knowingly false and defamatory communications within the professional industry. Defendant Zloof deliberately fabricated false narratives, transmitted via electronic communications and interstate wires, that bore no basis in fact—projecting her own criminal conduct and fraudulent schemes onto Plaintiff.

These fabrications were not isolated insults but acts of racketeering activity under 18 U.S.C. § 1961, intended to smear Plaintiff's reputation, mislead and confuse industry contacts, obstruct ongoing legal processes, and conceal prior acts of fraud and forgery. Plaintiff possesses substantial corroborating evidence—video and audio recordings, written communications, financial records, and third-party witness testimony—demonstrating the falsity of Defendant Zloof's claims and the deliberate, malicious nature of her conduct.

Defendant Zloof's retaliatory acts constitute obstruction of justice, witness tampering, and wire fraud, each forming part of her ongoing cover-up designed to conceal her original acts of passport forgery, fraud in connection with identification documents, grand theft, trade dress infringement, and copyright

infringement. Each retaliatory act is therefore evidence of consciousness of guilt and continuation of the same racketeering scheme.

70. In mid-June 2025, Defendant Zloof escalated her retaliatory tactics by submitting knowingly false accusations of "blackmail and extortion" to the Screen Actors Guild and disseminating those claims to a mutual producer. These allegations were maliciously false and categorically denied by the producer in written statements and proven false through settlement records and communications. Defendant Zloof's calculated use of fabricated charges to induce third-party reliance constitutes not only defamation, but also predicate acts of racketeering activity, including Wire Fraud under 18 U.S.C. § 1343 (by transmitting false statements electronically to SAG and industry contacts), Obstruction of Justice under 18 U.S.C. § 1503 (by interfering with Plaintiff's ability to vindicate rights in ongoing legal proceedings), and Retaliation against a Witness/Victim under 18 U.S.C. § 1513. The evidentiary record—comprising financial documentation, legal documents, third-party confirmations, and audiovisual materials—conclusively establishes the falsity of Defendant Zloof's claims. These actions were not isolated; they form part of Defendant's ongoing pattern of fraudulent inducement, grand theft by deception, and fraudulent misrepresentation designed to discredit Plaintiff, conceal prior criminal conduct, and perpetuate her unlawful enterprise.

71. In July 2024, Defendant Zloof escalated her retaliatory conduct further by colluding with a third-party individual, Sam Mestman, who at the time was himself being sued by Plaintiff in a separate civil action for contributory copyright Infringement, negligence, and unjust enrichment arising from his refusal to remove links on his companies website which was hosting Plaintiff's stolen creative content from Defendant Zloof. Rather than act independently, Defendant Zloof and Mr. Mestman conspired to draft a knowingly false smear letter intended to discredit Plaintiff in ongoing legal proceedings.

Mr. Mestman had never met Plaintiff personally, yet participated in this collusive act while simultaneously facing his own liability for Plaintiff's claims. Defendant Zloof then submitted the false letter into evidence in a separate legal matter in an attempt to obstruct justice, tamper with witness credibility, and retaliate against Plaintiff. Notably, Defendant Zachary Jones stood by Defendant Zloof throughout these proceedings, endorsing her actions and

lending support as she knowingly introduced false evidence into the record. His participation and encouragement further demonstrate the existence of a coordinated enterprise designed to discredit Plaintiff and obstruct judicial proceedings.

The contents of the letter were patently false and defamatory, forcing Plaintiff to notify law enforcement and file a supplemental police report documenting this act of collusion, evidence tampering, and obstruction. This conduct demonstrates Defendant's ongoing conspiracy with third parties to retaliate against Plaintiff, discredit lawful claims, and undermine judicial proceedings. Such coordinated misconduct evidences a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), supporting Plaintiff's claims for Fraudulent Inducement, Conspiracy, Destruction, Alteration, or Falsification of Records, Intentional Interference with Prospective Economic Advantage, and Unjust Enrichment.

Further, the repeated use of knowingly false communications, fabricated records, and collusive third-party interventions constitutes an enterprise scheme designed to cover up Defendant Zloof's initial fraudulent acts, secure unlawful financial advantage, and retaliate against Plaintiff for seeking redress. These facts establish not only civil liability but also the structural elements of a RICO enterprise directed at obstructing justice and silencing Plaintiff.

These facts are substantiated by legal documentation, contemporaneous written communications, and corroborating witness statements, all of which independently verify Plaintiff's claims.

72. Defendant Zloof escalated her campaign of retaliation by colluding with another third-party male individual who had previously been restrained by Plaintiff pursuant to a September 2024 court-ordered Temporary Restraining Order ("TRO") and related police report for harassment. At the time of the TRO filing, Defendant Zloof was physically present with Plaintiff in West Hollywood and was herself listed as a protected party under the order. Defendant Zloof also personally assisted Plaintiff in filing a police report against this individual and had full knowledge of his obsessive behavior, harassing conduct, and dangerous history.

Despite this knowledge, Defendant Zloof later chose to align herself with this previously restrained individual in a coordinated scheme to harass, smear, discredit, and retaliate against Plaintiff, further endangering Plaintiff's safety and exacerbating the harm caused by her defamatory and fraudulent conduct. Defendant Zloof colluded with this restrained individual to manufacture false claims, circulate defamatory emails and letters, and project baseless accusations designed to obstruct justice, interfere with Plaintiff's cooperation with law enforcement, and retaliate against Plaintiff for pursuing civil and criminal remedies.

As a direct result of this coordinated retaliation, in or about July 2025, Plaintiff was compelled to file an additional police report and obtain a second restraining order against this individual, as well as initiate a separate civil lawsuit against him for defamation, civil harassment, and related causes of action. Plaintiff was further forced to seek and obtain a second Domestic Violence Restraining Order against Defendant Zloof, naming both her and the third-party individual as restrained parties, in order to prevent their continued collusion and retaliatory campaign.

Defendant Zloof also sought out other third parties from Plaintiff's past—individuals with whom Plaintiff had prior personal conflicts—targeting them to smear and retaliate. All of these third parties were listed as protected persons on the restraining order.

This conduct constitutes not merely defamation or harassment, but a deliberate conspiracy and pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5). Defendant Zloof's coordination with previously restrained parties and other third parties forms an "enterprise" under 18 U.S.C. § 1961(4), operating with the common purpose of retaliating against and discrediting Plaintiff through fraud, obstruction of justice, witness tampering, and retaliatory harassment of a documented crime victim.

The timing of this collusion, immediately following Plaintiff's cooperation with law enforcement and pursuit of civil and criminal remedies, demonstrates retaliatory intent and evidences Defendant Zloof's dangerous ongoing pattern of fraud, deceit, obstruction, and conspiracy. Defendant's tampering and alteration of digital evidence further underscore her coordinated effort to conceal her

fraudulent scheme, evade accountability, silence Plaintiff, and continue her fraudulent unjust enrichment.

This conduct supports Plaintiff's federal claims for Fraud in Connection with Identification Documents, Wire Fraud, Civil Conspiracy, Intentional Interference with Prospective Economic Advantage, and Grand Theft by Deception, and further establishes Defendant Zloof's liability under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) and (d).

73. In furtherance of this retaliatory racketeering scheme, Defendant Zloof attempted to erase Plaintiff's existence entirely, deleting Plaintiff's contact information, photograph, and other records from her devices, and then submitting digitally altered, incomplete, and misleading evidence into other legal matters. This conduct was designed to confuse the trier of fact, distort the context of the relationship and underlying events, and obstruct ongoing judicial proceedings. Such conduct constitutes knowing evidence tampering, a federal offense under 18 U.S.C. §§ 1512 and 1519, and was reported to LAPD. These acts serve as predicate racketeering offenses of obstruction of justice and destruction, alteration, or falsification of records under 18 U.S.C. § 1961(1).

74. Defendant Zloof's actions extended beyond mere deletion, as she actively altered and manipulated digital evidence for submission into a separate court matter, thereby undermining judicial process and attempting to obstruct Plaintiff's access to redress. This conduct, though arising in separate proceedings, is directly relevant here because it demonstrates Defendant Zloof's ongoing pattern of deceit, manipulation, and willingness to falsify material evidence under legal scrutiny.

Additionally, Defendant's digital forgery of a United States Passport constitutes federal evidence tampering and document fraud in violation of 18 U.S.C. §§ 1543 and 1546. These acts, when combined with her scheme of fraudulent inducement, unjust enrichment, and retaliatory misconduct, establish a clear pattern of racketeering activity. Such acts support Plaintiff's RICO claims and related causes of action, including Fraud in Connection with Identification Documents, Destruction, Alteration, or Falsification of Records, Conspiracy, Copyright and Trade Dress Infringement, Grand Theft, Intentional Interference

with Prospective Economic Advantage, Theft of Trade Secrets, and Forgery of a U.S. Passport.

75. During the separate legal proceeding, Defendant Serene Zloof submitted tampered and falsified evidence—including altered phone records, manipulated exhibits, and fabricated third-party statements—in an attempt to obstruct the truth and retaliate against Plaintiff. In addition to these falsifications, Defendant Zloof engaged in ongoing retaliatory conduct by exhibiting unhinged and aggressive behavior, openly mocking and laughing in Plaintiff's face during a court-ordered mediation session in front of mediators. Defendant further compounded this misconduct by knowingly making false statements, submitting false letters and defamatory witness declarations, all intended to cover up her initial fraudulent scheme, harass Plaintiff, discredit her claims, and obstruct the administration of justice.

Defendant Serene Zloof's actions, as detailed above, constitute predicate acts under 18 U.S.C. § 1961(1), including obstruction of justice, wire fraud, and fraud in connection with identification documents (forged U.S. Passport). These acts were not isolated but part of an ongoing racketeering scheme designed to defraud Plaintiff, obstruct judicial proceedings, and secure unlawful personal and financial advantage.

Defendant Zachary Jones knowingly associated with and supported this enterprise, being physically present during court proceedings in which falsified evidence and tampered records were submitted. His endorsement and active support of Defendant Zloof's fraudulent conduct constitute sustained aiding and abetting, conspiracy, and direct participation in the affairs of the enterprise through a pattern of racketeering activity.

Collectively, Defendants' conduct establishes the existence of an enterprise engaged in a continuous pattern of racketeering activity under 18 U.S.C. § 1962(c) and (d), resulting in substantial injury to Plaintiff's business, property, and legal rights.

76. After Plaintiff was forced to file a second restraining order against Defendant Zloof in late July 2025, Defendant Zloof evaded process servers and continued an orchestrated campaign of harassment, fraud, and retaliation. Despite repeated cease-and-desist notices, law enforcement reports, and direct notifications to her

legal counsel, Defendant Zloof persisted in cloning Plaintiff's copyrighted and trade dress-protected works, posting infringing content across social media platforms, and exploiting Plaintiff's intellectual property in direct violation of federal law and court processes. Plaintiff was compelled to pursue additional repeated DMCA takedowns, which led TikTok to permanently terminate one of Defendant Zloof's new accounts and remove infringing material. Instagram likewise removed infringing content from Defendant Zloof new account for Trade Dress and Copyright Infringement.

Within 48 hours of these removals and termination, Defendant Zloof brazenly reposted the same infringing content, demonstrating a willful and calculated disregard for federal intellectual property law and platform enforcement mechanisms. This conduct was not isolated, but part of a continuing pattern of racketeering activity designed to defraud, harass, and obstruct justice.

Defendant Zloof then escalated further by publishing false and defamatory statements accusing Plaintiff of "cyberstalking" and "fraudulent DMCA takedowns." These accusations were knowingly false: Plaintiff's actions consisted of lawful intellectual property enforcement, undertaken to protect her own copyrights and trade dress from ongoing theft and exploitation. Defendant Zloof's false narrative was a retaliatory tactic designed to discredit Plaintiff, obstruct justice, and continue her unlawful campaign unabated.

77. Defendants Rosy Zloof and Zachary Jones played integral roles in enabling and perpetuating this unlawful enterprise. Defendant Rosy Zloof knowingly concealed and facilitated Serene Zloof's fraudulent scheme, while personally benefitting from Plaintiff's fraudulently induced funds and resources. Defendant Zachary Jones was physically present and actively supportive during legal proceedings where falsified evidence was submitted, and he directly profited from Plaintiff's stolen property and unlawfully induced funds. Both Defendants repeatedly endorsed and amplified Serene Zloof's retaliatory tactics —including her public taunting of Plaintiff's stolen intellectual property— thereby lending credibility, encouragement, and material support to her unlawful conduct. Their presence, complicity, and knowing participation were not incidental but deliberate acts in furtherance of a joint scheme to defraud Plaintiff, obstruct justice, and unlawfully enrich themselves.

Accordingly, Defendants Serene Zloof, Rosy Zloof, and Zachary Jones, acting in concert, formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4). Through repeated acts of fraud, copyright infringement, obstruction of justice, and retaliation, Defendants engaged in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d). Their actions caused substantial injury to Plaintiff's business, property, and legal rights, and directly support Plaintiff's claims for civil RICO liability, conspiracy, fraud, trade dress infringement, copyright infringement, and intentional interference with prospective economic advantage.

78. Plaintiff possesses over 2,000 discrete pieces of corroborating evidence—including raw timestamped videos, audio recordings, text messages, financial records, photographs, and written correspondence—directly capturing Defendant Zloof's own admissions, contradictions, and fraudulent representations. This evidentiary record establishes repeated acts of fraud, forgery, theft, and obstruction of justice.

79. Plaintiff also maintains approximately 1,500 pieces of personal/private audiovisual material, more than 13,000 photographs, and approximately 2,500 pieces of professional video documenting interactions with Defendant Zloof. These materials, preserved in their original raw, unaltered state ensuring admissibility and verifiability under federal evidentiary standards.

80. In addition, the record includes photographs, videos, and recorded communications involving Defendants Rosy Zloof and Zachary Jones, documenting their direct participation in, benefit from, and endorsement of the fraudulent inducement, grand theft, and retaliatory conspiracy alleged herein. Their active participation further demonstrates the existence of an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).

81. Accordingly, Plaintiff's claims are substantiated by thousands of pieces of admissible evidence reflecting a pattern of racketeering activity and conspiracy under 18 U.S.C. § 1962(c) and (d). The evidentiary record demonstrates not isolated disputes, but an ongoing enterprise in which Defendants Serene Zloof, Rosy Zloof, and Zachary Jones jointly engaged in repeated acts of fraud, copyright infringement, obstruction of justice, retaliation, and interstate theft to enrich themselves and damage Plaintiff's property and professional livelihood.

82. Taken together, these acts constitute a pattern of racketeering activity under 18 U.S.C. § 1961(1), including but not limited to wire fraud, mail fraud, obstruction of justice, and copyright infringement. Each of these predicate offenses occurred within the required statutory time frame, involved the use of interstate commerce, and were committed with continuity and relatedness. Accordingly, Defendants' conduct satisfies the statutory predicate acts requirement and falls squarely within the scope of the Racketeer Influenced and Corrupt Organizations Act (RICO).

## **PLAINTIFF'S CLAIMS ARE NOT SUBJECT TO DISMISSAL, SLAPP, OR PROCEDURAL INVALIDATION**

83. Plaintiff asserts that this Complaint is properly pled under federal law, supported by clear factual allegations, and grounded in verifiable evidence including authenticated video and audio recordings, IP and metadata records, sworn witness statements, financial transactions, and physical documentation. Plaintiff's claims—particularly those under RICO (18 U.S.C. § 1961 et seq.), Wire Fraud (18 U.S.C. § 1343), and Passport Forgery (18 U.S.C. § 1543)—are corroborated by chain-of-custody documentation, written and verbal admissions of document ownership, and Defendant Zloof's own statements evidencing intent to deceive and defraud for career advancement, financial gain, and unlawful personal benefit. Accordingly, any attempt by Defendants to derail or avoid adjudication through procedural mechanisms is both legally and factually baseless.

84. Plaintiff anticipates Defendants may attempt to raise procedural defenses or dilatory tactics. Each fails as a matter of law and fact:

a. **Motion to Dismiss (Rule 12(b)(6))** — Defendants may argue failure to state a claim. However, Plaintiff has pled with specificity each element required under federal RICO and associated statutes, including:

- Existence of an enterprise composed of Defendants Zloof, Zachary Jones, and Rosy Zloof, acting in concert for illicit purposes.

- A pattern of racketeering activity consisting of predicate acts including Forgery of a U.S. Passport, Wire Fraud, Fraud in Connection with

Identification Documents, Destruction or Falsification of Records, Obstruction of Justice, Mail Fraud, Criminal Copyright Infringement, Theft of Trade Secrets, and International Transport of Stolen Property.

- Injury to Plaintiff's business and property, including but not limited to loss of intellectual property, theft of trade secrets, uncompensated labor, stolen funds, reputational damage, and emotional distress flowing from Defendants' fraud.

85. Plaintiff's evidence includes authenticated chain-of-custody video documentation of the forged passport, transmission records, IP-verified communications, and Defendants' own admissions confirming authorship, possession, and fraudulent intent. Such claims cannot be dismissed at the pleading stage.

b. **Motion to Strike / Frivolous Characterization** — Defendants may assert that Plaintiff's claims are speculative or improperly pled. This fails outright. Plaintiff's allegations are corroborated by:

- Defendant Zloof's written, video and audio admissions,

- Authenticated video and audio recordings,

- Correspondence from co-defendants Rosy Zloof and Zachary Jones

- Financial records documenting fraudulent inducement and receipt of stolen property.

86. Plaintiff further submits video, written and photographic documentation and correspondence confirming co-defendants Rosy Zloof and Zachary Jones's knowing participation and material benefit from fraudulently induced funds and stolen property. Collectively, these establish repeated criminal acts constituting a continuing pattern of racketeering activity within the meaning of RICO.

c. **Motion to Quash / Limit Discovery** — Defendants may attempt to obstruct discovery. Plaintiff's subpoenas are narrowly targeted to non-privileged, highly relevant categories—financial records, electronic communications, device data, and distribution records—each essential to proving the racketeering scheme. Blocking such discovery would itself constitute obstruction of justice.

d. **Motion to Stay Proceedings** — Defendants may argue for delay citing ongoing criminal investigations. This is meritless. The existence of parallel criminal inquiries—including an active LAPD warrant request to the Los Angeles District Attorney—confirms the seriousness of the allegations and underscores Plaintiff's RICO claims. A stay would only prejudice Plaintiff while permitting Defendants' unlawful enterprise to persist.

e. **Any Other Procedural Tactics** — Plaintiff maintains over 2,000 authenticated exhibits—including chain-of-custody videos, audio admissions, financial records, and corroborating witness statements. These demonstrate Defendants' fraudulent intent and the commission of statutory predicate acts. The claims are not speculative but demonstrably supported by overwhelming admissible evidence. Dismissal, sanctions, or procedural invalidation would be improper as a matter of law.

## FIRST CAUSE OF ACTION

### Count I – Civil RICO
### (Racketeer Influenced and Corrupt Organization ACT)
### (18 U.S.C. § 1961-1968)
### (Against All Defendants)

87. Plaintiff re-alleges and incorporates by reference paragraphs 7–37 of the Factual Allegations, as well as the Preliminary Statement at pages 2–6, as though fully set forth herein.

88. Defendants Serene Zloof, Rosy Zloof, and Zachary Jones knowingly and willfully formed and operated an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4). The enterprise had a common purpose: to defraud Plaintiff of money, creative labor, property, intellectual capital, and professional opportunities, and to enrich Defendants through fraud, forgery, theft, and obstruction.

89. Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), committing multiple predicate acts, including but not limited to:

- Forgery of a United States Passport and Fraud in Connection with Identification Documents (18 U.S.C. §§ 1543, 1028) (¶¶ 19–21, 25–27);

- Wire Fraud and Mail Fraud (18 U.S.C. §§ 1341, 1343) through more than
  200 fraudulent wire transfers, electronic communications, and mailed items
  (¶¶ 12, 14–18, 35–36);

- Obstruction of Justice and Falsification of Records (18 U.S.C. §§ 1503,
  1519), including the alteration and submission of manipulated evidence in
  legal proceedings (¶¶ 12, 32);

- Criminal Copyright Infringement and Theft of Trade Secrets (17 U.S.C. §
  501; 18 U.S.C. § 1832), including unauthorized use, release, and
  exploitation of Plaintiff's copyrighted works and trade dress (¶¶ 12, 33, 37);

- Interstate and International Transportation of Stolen Property (18 U.S.C. §
  2314), including Plaintiff's costumes, wigs, electronics, and creative
  materials (¶¶ 15, 17, 33);

- Receipt and Concealment of Stolen Property (18 U.S.C. § 2315), including
  retention of Plaintiff's stolen property and financial proceeds (¶¶ 17–18, 25,
  33).

90. These predicate acts were related and continuous, spanning at least August 2022
through March 2025 (¶¶ 9–37). They shared the common purpose of exploiting
Plaintiff's professional standing, labor, finances, and intellectual property for
Defendants' unlawful enrichment and career advancement.

91. Defendant Serene Zloof acted as the ringleader and mastermind of the
enterprise, orchestrating the fraudulent scheme through misrepresentations of
identity, transmission of a forged U.S. passport (¶¶ 19–21, 25–27), and repeated
inducement of financial transfers (¶¶ 14–18, 35–36).

92. Defendants Rosy Zloof and Zachary Jones acted as knowing participants and
facilitators of the scheme, each accepting fraudulently obtained benefits and
actively concealing Defendant Serene Zloof's identity fraud, stolen assets, and
misappropriated works (¶¶ 15, 17–18, 25, 33).

93. As a direct and proximate result of Defendants' violations of 18 U.S.C. §
1962(c) and (d), Plaintiff suffered injury to her business and property, including
but not limited to:

- $47,348 in direct personal financial transfers (¶ 35);

- $54,344.16 in creative project and branding investments (¶ 36);

- $280,050 in uncompensated labor and intellectual property (¶ 37);

- Loss of tangible property unlawfully taken and transported (¶¶ 15, 33);

- Ongoing reputational and professional harm caused by Defendants' obstruction, defamation, and retaliatory conduct (¶¶ 28–32).

94. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages, costs of suit, and reasonable legal fees. Plaintiff also seeks injunctive relief barring Defendants from further exploiting her works, property, or likeness, and ordering the destruction of all infringing or stolen creative materials in Defendants' possession (Preliminary Statement, pp. 5–6).

95. As a direct and proximate result of the foregoing conduct, Plaintiff has been injured in her business and property, and seeks damages as set forth in the Prayer for Relief below.

## SECOND CAUSE OF ACTION
### Count II – Copyright Infringement
### (Against All Defendants)

96. Plaintiff re-alleges and incorporates by reference paragraphs 7–37 of the Factual Allegations (pp. 14–33) and the Preliminary Statement (pp. 2–6) as though fully set forth herein.

97. Plaintiff is the sole and exclusive owner of numerous copyrighted works created between August 2023 and March 2025, including but not limited to: original scripts, film and television productions, photography, graphic design, branding materials, pitch decks, press kits, audiovisual works, and other creative content (¶¶ 10, 12, 33, 37, pp. 8–9, 32–33).

98. Defendant Serene Zloof, without license, consent, or assignment of rights, willfully copied, reproduced, distributed, displayed, and publicly performed Plaintiff's copyrighted works in violation of 17 U.S.C. § 501 (¶¶ 12, 14, 33, 36–37, pp. 9, 17–18, 30–33).

99. Defendants Rosy Zloof and Zachary Jones are liable as contributory and vicarious infringers. They knowingly facilitated, endorsed, and materially benefitted from Serene Zloof's infringement by retaining property and funds derived from the unlawful exploitation of Plaintiff's works, by concealing and supporting Serene Zloof's misconduct, and by endorsing and profiting from the infringing projects (¶¶ 15, 17–18, 25, 33, 37, pp. 17–19, 24–25, 29–33).

100. Defendants continued these infringing acts despite receiving cease-and-desist demands and DMCA takedown notices, with Plaintiff forced to issue repeated legal demands to stop ongoing infringement (¶¶ 12, 33, 37, pp. 9, 32–33).

101. Defendants profited from this unlawful exploitation by securing financial enrichment, career advancement, industry recognition, and publicity, including the use of Plaintiff's works for branding campaigns, social media promotion, and a billboard placed on Sunset Boulevard (¶¶ 12, 36–37, pp. 9, 31–32).

102. Plaintiff has suffered substantial damages as a direct and proximate result of Defendants' infringement, including uncompensated labor, lost licensing and revenue opportunities, reputational harm, and loss of exclusive control over her works (¶¶ 33, 37, pp. 29–33).

103. Pursuant to 17 U.S.C. §§ 502–505, Plaintiff is entitled to:

- Injunctive relief barring Defendants from any further infringement;

- Actual damages suffered by Plaintiff as a result of Defendants' infringing conduct;

- Disgorgement of Defendants' profits attributable to infringement;

- Costs of suit and reasonable legal fees under 17 U.S.C. § 505.

104. In addition, the copyright infringement alleged herein constitutes a predicate act in furtherance of the racketeering enterprise described in Count I, reinforcing Defendants' liability under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961–1968).

105. As a direct and proximate result of the foregoing conduct, Plaintiff has been injured in her business and property, and seeks damages as set forth in the Prayer for Relief below.

### THIRD CAUSE OF ACTION

**Count III – Trade Dress Infringement**
**(Against All Defendants)**

106. Plaintiff re-alleges and incorporates by reference paragraphs 7–37 of the
Factual Allegations (pp. 14–33) and the Preliminary Statement (pp. 2–6) as
though fully set forth herein.

107. Plaintiff has developed distinctive trade dress in her creative works and brand,
including unique designs, graphics, layouts, logos, branding elements, and the
overall look and feel of her projects and productions (¶¶ 12, 33, 36–37, pp. 9,
29–33). This trade dress serves to identify Plaintiff as the true source of the
works and has acquired significant goodwill in the entertainment industry.

108. Defendant Serene Zloof directly infringed Plaintiff's trade dress by copying,
misappropriating, and passing off Plaintiff's distinctive visual designs,
branding, and presentation elements as her own, including but not limited to
cloned logos, graphics, and visual branding materials (¶¶ 12, 33, 36–37, pp. 9,
30–33). Such conduct is likely to cause confusion, mistake, or deception as to
the origin, sponsorship, or approval of the works, in violation of 15 U.S.C. §
1125(a).

109. Defendants Rosy Zloof and Zachary Jones are liable as contributory and
vicarious infringers. They knowingly benefitted from and materially assisted
Serene Zloof's misappropriation of Plaintiff's trade dress by endorsing and
profiting from projects that used Plaintiff's branding, concealing the fraudulent
scheme, and accepting financial and personal benefits derived from the
infringing works (¶¶ 15, 17–18, 25, 33, 37, pp. 17–19, 24–25, 29–33).

110. Defendants' unlawful acts caused actual confusion among industry
professionals, third parties, and consumers as to the true source and ownership
of the works. Plaintiff's branding, reputation, and professional goodwill were
wrongfully diverted to Defendants, who exploited Plaintiff's distinctive trade
dress for financial gain and career advancement (¶¶ 12, 33, 36–37, pp. 9, 30–
33).

111. Plaintiff has suffered substantial damages as a direct and proximate result of
Defendants' infringement, including loss of exclusive control over her trade

dress, reputational harm, lost revenue, and diverted professional opportunities
(¶¶ 33, 37, pp. 29–33).

112. Pursuant to 15 U.S.C. §§ 1116 and 1117, Plaintiff is entitled to:

- Injunctive relief barring Defendants from any further use of Plaintiff's trade
  dress;

- Defendants' profits attributable to their infringing conduct; Actual damages
  sustained by Plaintiff;

- Treble damages where the infringement was willful;

- Costs of suit and reasonable attorneys' fees.

113. In addition, the trade dress infringement alleged herein constitutes a predicate
act in furtherance of the racketeering enterprise described in Count I,
reinforcing Defendants' liability under the Racketeer Influenced and Corrupt
Organizations Act (18 U.S.C. §§ 1961–1968).

114. As a direct and proximate result of the foregoing conduct, Plaintiff has been
injured in her business and property, and seeks damages as set forth in the
Prayer for Relief below.

### **FOURTH CAUSE OF ACTION**

**Count IV – Theft of Trade Secrets**
**(18 U.S.C. § 1836 et seq.; Cal. Civ. Code § 3426 et seq.)**
**(Against Defendant Serene Zloof)**

115. Plaintiff realleges and incorporates by reference the allegations contained in ¶¶
25–37, 52–68, 112–129, and 145–160 of this Complaint, which set forth
Plaintiff's ownership, creation, and protection of confidential creative materials
and business assets.

116. As alleged in ¶¶ 52–68 and 145–152, Plaintiff is the sole and exclusive owner
of confidential and proprietary trade secrets, including original branding visual
concepts, branding digital assets, photographs, videos, design files, business
models, unreleased projects, and behind-the-scenes production materials
(collectively, the "Trade Secrets").

117. As alleged in ¶¶ 112–118, Plaintiff took reasonable measures to maintain the secrecy of these Trade Secrets, including restricting access, storing materials securely, and limiting disclosure only to trusted collaborators under controlled circumstances.

118. As alleged in ¶¶ 119–124 and 153–160, Defendant Zloof misappropriated Plaintiff's Trade Secrets by unlawfully taking possession of confidential creative works and production assets, using them for her own benefit, and disclosing them publicly and to third parties without Plaintiff's authorization.

119. As alleged in ¶¶ 125–129, Defendant Zloof knew or should have known that she acquired these Trade Secrets under circumstances giving rise to a duty to maintain their secrecy and restrict their use.

120. As alleged in ¶¶ 145–152, Defendant Zloof has used and continues to use Plaintiff's Trade Secrets in commerce to obtain a competitive advantage, to market herself and her projects falsely, and to secure professional and financial opportunities that rightfully belonged to Plaintiff.

121. Defendant Zloof's misappropriation was willful, malicious, and intentional, constituting "misappropriation" under both the Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.) and California's Uniform Trade Secrets Act (Cal. Civ. Code § 3426 et seq.).

122. As alleged in ¶¶ 161–170, and as a direct and proximate result of Defendant Zloof's theft and misappropriation of Plaintiff's Trade Secrets, Plaintiff has suffered substantial injury and harm to Plaintiff's business and creative enterprise.

123. Plaintiff is entitled to damages, restitution, exemplary damages for willful and malicious misappropriation, reasonable legal fees under the DTSA and UTSA, and injunctive relief preventing Defendant Zloof from further possession, disclosure, or use of Plaintiff's Trade Secrets.

124. As a direct and proximate result of the foregoing conduct, Plaintiff has been injured in her business and property, and seeks damages as set forth in the Prayer for Relief below.

# FIFTH CAUSE OF ACTION

## Count V – False Designation of Origin (Lanham Act, 15 U.S.C. § 1125(a))
## (Against Defendant Serene Zloof)

125. Plaintiff realleges and incorporates by reference the allegations contained in ¶¶ 1–199 above as though fully set forth herein.

126. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits any person from using in commerce any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of such person with another, or as to the origin, sponsorship, or approval of goods, services, or commercial activities by another.

127. Plaintiff is the sole and exclusive owner of the creative works, intellectual property, branding, and related materials that were conceived, authored, financed, and produced by Plaintiff. Plaintiff has never assigned, licensed, or transferred any rights in these works to Defendant Zloof.

128. Defendant Zloof, without authorization, falsely represented herself as the creator, originator, or owner of Plaintiff's works and publicly displayed, marketed, and distributed said works under her own name and brand in commerce.

129. Defendant Zloof's conduct was willful, intentional, and undertaken with the purpose of trading on Plaintiff's reputation, labor, and goodwill, thereby misleading consumers, collaborators, and third parties as to the true source and origin of the works.

130. Defendant Zloof's false designations of origin are likely to cause, and have caused, consumer confusion, mistake, and deception in violation of 15 U.S.C. § 1125(a).

131. As a direct and proximate result of Defendant Zloof's unlawful actions, Plaintiff has suffered substantial injury, including lost revenues, diversion of business opportunities, damage to professional standing, and diminution of the value of Plaintiff's intellectual property.

132. Plaintiff is entitled to damages, disgorgement of Defendant's profits, treble damages for willful violation, and injunctive relief under 15 U.S.C. § 1117(a), including but not limited to a permanent injunction barring Defendant from further misappropriation, use, or false representation of Plaintiff's works.

## SIXTH CAUSE OF ACTION

### Count VI – Receipt of Stolen Property (Cal. Penal Code §496(c))
### (Against All Defendants)

133. Plaintiff re-alleges and incorporates by reference the allegations contained in ¶§1–214 of this Complaint as though fully set forth herein.

134. Defendants knowingly received, concealed, sold, or aided in concealing, selling, or withholding property and intellectual property that had been stolen from Plaintiff, including creative works, equipment, financial assets, and proprietary materials (see ¶§140–160, ¶§170–185).

135. Defendants knew, or reasonably should have known, that the property was stolen or wrongfully obtained through fraud, forgery, and deception (see ¶§161–169, ¶§186–195).

136. Plaintiff has suffered direct damages, including financial losses, reputational harm, and deprivation of rightful use of property, as a result of Defendants' violations of Penal Code §496(c).

137. As a direct and proximate result of the foregoing conduct, Plaintiff has been injured in her business and property, and seeks damages as set forth in the Prayer for Relief below.

## SEVENTH CAUSE OF ACTION

### Count VII – Fraudulent Inducement
### (Against Defendant Serene Zloof)

138. Plaintiff realleges and incorporates by reference ¶¶ 20–65, 85–120, 135–160, 180–200, and all other relevant allegations of this Complaint as though fully set forth herein.

139. Defendant Zloof knowingly made false and material misrepresentations of fact to Plaintiff, including but not limited to: (a) presenting a digitally forged passport purporting to establish a false identity; (b) deliberately misrepresenting her age by nearly a decade; (c) falsely claiming lawful ownership of intellectual property that in fact belonged solely to Plaintiff; and (d) concealing her true intentions of exploiting Plaintiff's financial resources, professional labor, and creative works for her own unlawful gain.

140. Defendant Zloof made these misrepresentations with the intent that Plaintiff rely upon them in entering into personal, financial, and professional arrangements with Defendant.

141. Plaintiff justifiably relied on these misrepresentations by investing substantial sums of money, creative labor, and intellectual property into projects involving Defendant Zloof, believing the relationship and business arrangements to be legitimate and made in good faith.

142. Plaintiff's reliance on these fraudulent misrepresentations directly and proximately caused damages, including but not limited to: (a) financial losses exceeding $380,000 in direct expenditures and uncompensated labor; (b) misappropriation of Plaintiff's copyrighted works and trade secrets; and (c) reputational, professional, and personal harm arising from the fraudulent inducement.

143. As a result of Defendant Zloof's fraudulent inducement, Plaintiff has suffered actual damages in an amount to be proven at trial, and seeks punitive and exemplary damages to deter similar misconduct, as well as restitution of all amounts unjustly obtained by Defendant through her fraudulent scheme.

144. As a direct and proximate result of the foregoing conduct, Plaintiff has been injured in her business and property, and seeks damages as set forth in the Prayer for Relief below.

## EIGHTH CAUSE OF ACTION

### Count VIII – Conversion
### (Against All Defendants)

145. Plaintiff re-alleges and incorporates by reference the allegations contained in
¶§1–222 of this Complaint as though fully set forth herein.

146. Defendants wrongfully exercised dominion and control over Plaintiff's
personal property, intellectual property, and financial assets, depriving Plaintiff
of lawful ownership and use (see ¶§135–160, ¶§178–185).

147. As a direct and proximate result, Plaintiff has suffered damages including loss
of property, diversion of creative works, and interference with ongoing projects.

148. As a direct and proximate result of the foregoing conduct, Plaintiff has been
injured in her business and property, and seeks damages as set forth in the
Prayer for Relief below.

## NINTH CAUSE OF ACTION

### Count IX – Civil Conspiracy
### (Against All Defendants)

149. Plaintiff re-alleges and incorporates by reference the allegations contained in
¶§1–225 of this Complaint as though fully set forth herein.

150. Defendants agreed and conspired with one another to commit unlawful acts
against Plaintiff, including fraud, theft, forgery, and misappropriation of
intellectual property (see ¶§170–180, ¶§186–200).

151. Each Defendant is jointly and severally liable for the acts of the others
committed in furtherance of this conspiracy.

152. As a direct and proximate result of the foregoing conduct, Plaintiff has been
injured in her business and property, and seeks damages as set forth in the
Prayer for Relief below.

## TENTH CAUSE OF ACTION

### Count X – Aiding and Abetting
### (Against Defendant Rosy Zloof and Defendant Zachary Jones)

153. Plaintiff re-alleges and incorporates by reference the allegations contained in ¶§1–228 of this Complaint as though fully set forth herein.

154. Defendants Jones and Rosy Zloof knowingly provided substantial assistance and encouragement to Defendant Serene Zloof in her wrongful acts, including theft, fraud, and misappropriation of Plaintiff's works (see ¶§175–180, ¶§187–195).

155. By their conduct, Defendants Jones and Rosy Zloof are jointly liable for the resulting damages.

156. As a direct and proximate result of the foregoing conduct, Plaintiff has been injured in her business and property, and seeks damages as set forth in the Prayer for Relief below.

## ELEVENTH CAUSE OF ACTION

### Count XI – Unjust Enrichment
### (Against All Defendants)

157. Plaintiff re-alleges and incorporates by reference the allegations contained in ¶§1–231 of this Complaint as though fully set forth herein.

158. Defendants unjustly received and retained benefits at Plaintiff's expense, including profits, professional recognition, and financial gain derived from Plaintiff's stolen works and resources (see ¶§190–199).

159. Equity and good conscience require restitution of these benefits to Plaintiff.

160. As a direct and proximate result of the foregoing conduct, Plaintiff has been injured in her business and property, and seeks damages as set forth in the Prayer for Relief below.

## TWELFTH CAUSE OF ACTION

### Count XII – Intentional Interference with Prospective Economic Advantage
### (Against Defendant Serene Zloof)

161.Plaintiff re-alleges and incorporates by reference the allegations contained in
¶§1–234 of this Complaint as though fully set forth herein.

162.Plaintiff had existing and prospective business relationships and economic
expectancies with third parties in the entertainment industry, of which
Defendant Zloof had knowledge (see ¶§200–210).

163.Defendant Zloof intentionally and wrongfully interfered with these
relationships by misappropriating Plaintiff's work, defaming Plaintiff, and
presenting herself as the rightful creator of Plaintiff's content.

164.As a direct and proximate result, Plaintiff suffered lost economic opportunities,
reputational damage, and financial losses.

165.As a direct and proximate result of the foregoing conduct, Plaintiff has been
injured in her business and property, and seeks damages as set forth in the
Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered in her favor and
against Defendants, jointly and severally, as follows:

166. **Compensatory Damages**

a. Award Plaintiff compensatory and general damages in an amount to be
proven at trial, but no less than Three Million Five Hundred Thousand
Dollars ($3,500,000.00) representing;

- Approximately $400,000.00 in direct, documented losses arising from
misappropriation of funds, theft of intellectual property, conversion, and
fraudulent inducement together with additional losses resulting from
Defendants' racketeering conduct, theft of trade secrets, false designation
of origin, unjust enrichment, interference with prospective business
advantage, and other unlawful acts alleged herein.

b. Award punitive and exemplary damages in an amount sufficient to punish Defendants and deter similar future misconduct;

c. Award restitution and disgorgement of all profits wrongfully obtained by Defendants through the unlawful acts alleged herein.

167. **Treble and Enhanced Damages**

a. Award Plaintiff treble damages pursuant to 18 U.S.C. § 1964(c) (RICO), 15 U.S.C. § 1117(a) (Lanham Act), and/or any other applicable statute providing for enhanced remedies, in an amount to be proven at trial.

168. **Disgorgement and Restitution**

a. Ordering Defendants to disgorge and restore to Plaintiff all profits, revenues, and benefits unjustly obtained through their unlawful conduct, including but not limited to proceeds derived from Plaintiff's intellectual property, creative works, trade secrets, and financial contributions.

169. **Injunctive Relief**

a. Issue a **Temporary Restraining Order and Preliminary Injunction**, followed by a permanent injunction, prohibiting Defendants from:

b. Using, reproducing, distributing, displaying, performing, licensing, transferring, or otherwise profiting from Plaintiff's intellectual property, creative works, or trade secrets;

c. Court-Ordered Destruction: Ordering the immediate surrender and permanent destruction of all copies, derivatives, and reproductions of Plaintiff's creative content, whether in physical, digital, or electronic form, that remain in Defendants' possession, custody, or control;

d. Asset Preservation: Prohibiting Defendants, including Defendant Rosy Zloof, from transferring, concealing, encumbering, dissipating, selling, or otherwise disposing of any real property, including but not limited to residential real estate, or any other significant assets, during the pendency of this litigation without prior Court approval;

e. Continuing the racketeering enterprise or engaging in related acts of fraud, forgery, conversion, or conspiracy;

f.  Interfering with Plaintiff's existing or prospective business relationships.

## 170. Constructive Trust / Equitable Relief

a.  Order the immediate forensic seizure, turnover, and supervised destruction of all devices, files, accounts, servers, drives, and copies of Plaintiff's creative works, likeness, photographs, videos, graphics, and intellectual property in Defendants' possession, custody, or control;

b.  Order Defendants to certify under penalty of perjury that no copies, backups, or derivative works remain in their possession, custody, or control.

c.  Imposing a constructive trust upon all property, funds, and assets obtained by Defendants through their unlawful acts, for the benefit of Plaintiff, and granting such equitable relief as the Court deems just and proper.

## 171. Punitive Damages

a.  Awarding punitive damages to punish Defendants' willful, malicious, and fraudulent conduct and to deter similar misconduct in the future.

## 173. Lifetime Prohibition

a.  Enter a permanent order barring Defendants from ever again using, reproducing, displaying, or profiting from Plaintiff's name, likeness, image, or creative works in any manner whatsoever.

## 174. Legal Fees & Costs

a.  Awarding Plaintiff her costs of suit, including reasonable legal fees, as permitted under 18 U.S.C. § 1964(c) (RICO), 15 U.S.C. § 1117(a) (Lanham Act), and any other applicable statute.

## 175. Interest

a.  Awarding pre-judgment and post-judgment interest at the maximum rate permitted by law..

## 176. Further Relief

a.  Granting such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action, claims, and issues in this matter that are triable of right by a jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure (or Cal. Code Civ. Proc. § 631). Plaintiff seeks to have all factual disputes, including the extent of damages, adjudicated before a jury.

## VERIFICATION

I, Natalie Bible, am the Plaintiff in the within action. I have read the foregoing Verified Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of August, 2025, in Los Angeles, California.

_____
Natalie Bible
Plaintiff, Pro Se